No. 4052

Second Circuit

———

McCLENDON v. LOUISIANA CENTRAL LUMBER CO.

———

(July 14, 1931. Opinion and Decree.)

———

A. D. Flowers, of Jena, attorney for plaintiff, appellant.

Thornton, Gist & Richey, of Alexandria, attorneys for defendant, appellee.

DREW, J. Plaintiff sued for compensation at the rate of $9.75 a week for a period of three hundred weeks, alleging that on the 24th day of September, 1930, while employed by the defendant at a daily rate of pay of $2.50, and while on his way to work on a train furnished by defendant to haul its employees to and from their work, he stuck a knife in his leg, which he alleges will result in permanent stiffness of the leg. He alleged that the accident happened in the following manner, to-wit:

That on the date above set out, defendant was conveying its employees, including plaintiff, to their work, when the train dropped one of its passenger coaches, and, inasmuch as the remaining coach did not supply sufficient seats for all the laborers, including petitioner, to sit upon, petitioner was forced to stand or procure such an improvised seat as he might provide for himself, and that not having any seat, he placed his lunch pail against the wall and sat down on same. That while thus seated and while engaged in making a wooden peg to use as a button for the support of his overalls, and as the train passed over a hill, it gave a sudden lurch, caused by the slack in couplings, and plaintiff was thrown from his seat on the lunch pail to the floor and in falling stuck the knife in his knee.

Defendant filed an exception of no cause of action based on the ground that, accepting as true the allegations of the petition, the accident did not arise out of the employment, and with reservations of its rights under the exception, filed an answer wherein it denied the principal allegations of the petition; and specially alleged that at the time of said accident plaintiff was performing no services for defendant in connection with his employment, and that he was using his knife in a manner purely for his own benefit, and that, therefore, the accident did not arise out of the employment and had no connection therewith.

After the exception of no right or cause of action was overruled by the court, defendant filed a supplemental answer wherein it alleged that it provided the plaintiff with a safe place to ride to and from his work in its coaches; that it provided said coaches with seats for the benefit of its employees in traveling to and from their work; that plaintiff left his seat in the coach in which he was riding voluntarily and of his own free will and sat upon his dinner pail; that in so doing and in opening his pocketknife and using it of his own accord and for his own personal use while so situated, he voluntarily placed himself in a more dangerous situation than was called for by his employment and outside of his employment, which bars his recovery herein.

It further alleged in the alternative that the seats provided by it afforded the employees a reasonably safe place to ride and were placed in said coaches for the protection and convenience of said employees; and that in voluntarily leaving said reasonably safe place, plaintiff deliberately failed to use an adequate guard or protection against accident provided by his employer, within the meaning of section 28 of Act No. 20 of 1914.

The lower court rendered judgment overruling the exception of no cause or right of action, and on the merits rejected plaintiff's demands, at his cost. From this judgment he has appealed.

Defendant has not answered the appeal; therefore, the exception of no cause or right of action is not before us for consideration.

The evidence discloses the following facts:

That plaintiff at the time of the injury was employed by the appellee as a common laborer, at a salary of $2.50 per day for a six-day week; that appellant lived at a log camp owned by appellee, at Webb, La., and was daily transferred to and from the place of his labor by a train operated by the appellee for the purpose of transferring all of its laborers to their respective places of employment; that the train consisted of an engine and three box cars, in which seats were erected around the wall for the employees to sit while being so transferred; that on the morning appellant received the injury complained of, he was riding in one of said cars to the place of his employment. He had his knife open for the purpose of fixing a peg to replace a suspender button that had broken off. He was sitting on his dinner pail and, as the train passed over the crest of an incline, the train was stopped, and as the slack was taken out of the train, it caused a jar or jerk which caused plaintiff to lose his balance; and in trying to right himself and keep from falling over, he stuck the knife in his knee. That the jar or jerk of the train was not unusual and was such as could be expected on the stopping of the train; that appellant had ridden this train for twelve months preceding the accident; that infection and complications to the knee resulted from the wound inflicted by the knife. Appellant was confined to his room for a considerable time and in the sanitarium for about a month. At the time of trial in the lower court, appellant was unable to work and his knee was stiff, with the exception of a very slight mobility. Appellee paid hospital and medical bills amounting to $210, in accordance with a medical fee of $2.25 per month that had been paid by appellant. That the injury was received in Catahoula parish and appellee is doing a general logging business in Catahoula parish.

Appellant boarded the car on which he was injured at the camp and occupied a seat erected in the car by appellee for the employees to sit on in going to and from work. He later vacated his seat, without any good reason, as disclosed by this record, and took a seat upon his dinner pail where any slight jar or jerk of the train was liable to topple him over; and while in this position, opened his knife in an attempt to fix a suspender button. There were ample seats in the car for all employees, and the other employees who were seated were not disturbed by the jar of the train.

The first question in the case is: Did appellant deliberately fail to use an adequate guard or protection against accident provided for him (section 28 of Act No. 20 of 1914)? The word "deliberate" is defined by Webster's New International Dictionary to be: "Well-advised; carefully considered; not sudden or rash; weighing facts and arguments with a view to a choice of decision; carefully considering the probable consequences of a step; circumspect; slow in determining; to weigh in the mind; to consider the reasons for and against; to consider maturely; to regard upon; to ponder."

We do not think that the appellant's act in vacating his seat and sitting on his dinner pail was such a deliberate act as to come within the meaning of the word "deliberate," as used in the Workmen's Compensation Law of Louisiana. It was nothing more than thoughtlessness and negligence on the part of appellant. It must be remembered that he was not riding in a coach or car with regular seats in it, but was riding in a box car with boards nailed around the sides for seats. It is not shown that the seats in the car were placed there as an adequate guard or protection against accident, and no doubt were placed there for the convenience of the employees.

Section 28 of Act No. 20 of 1914, providing that "no compensation shall be allowed for an injury caused * * * by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him," presupposes a known and specific danger with a known guard or protection and a deliberate failure to make use thereof, and does not apply where no guard or protection has been provided, and where such risk was assumed, not deliberately, but under conditions requiring an instanter decision to take one of two courses, either of which the employee was free to choose, so far as he was informed. Farris v. Long Leaf Lumber Co., 148 La. 106, 86 So. 670.

In the present case, the danger of sitting on a dinner pail was not a known and specific danger that any known guard or protection had been provided against, and the record fails to disclose that appellant had been instructed by anyone to occupy the seats on the car and not to sit on his dinner bucket.

"Where it is part of an employee's duties that he be carried back and forth on a working train, the fact that he attempted to board the train while in motion and to get on the front of the engine, which was dangerous, does not debar recovery under Act No. 243 of 1916, especially where the evidence shows that he was a raw country boy who had only worked for a month and the conductor and a negro had gotten on the engine immediately preceding his attempt, the evidence not showing that he had been warned of the danger of boarding a moving train or that he should ride only in the caboose." Farris v. Louisiana Long Leaf Lumber Company, supra; (Adam's Workmen's Compensation Law of Louisiana).

In the case of Sears v. Peytral, 151 La. 971, 92 So. 561, the court said that an employee riding on a truck sitting on the floor, with his feet hanging over the side, instead of sitting on some empty boxes which were on the truck for a different purpose, did not constitute a deliberate failure to use an adequate guard or protection against accident, provided by the employer within the Employers' Liability Act (Act No. 20 of 1914, secs. 1 and 28; Act No. 38 of 1918, sec. 2).

"The failure of an employee riding on a truck to obey instructions not to sit on the floor with his feet hanging over the side does not bar a recovery of compensation under the Employers' Liability Act."

The facts in the cited case are as follows:

"Plaintiff was employed by defendant to work for him in connection with a marble yard he was operating in this city. In February, 1920, he was ordered to go with several others in a truck to get a piece of granite. In going on this mission for his master, he sat on the floor of the truck, and permitted his legs to hang over the side. While sitting in that position, the truck reached a hole in the street, and the driver, in seeking to avoid it, passed near a water plug, which struck one of plaintiff's legs and broke it.

"During the course of plaintiff's treatment, defendant sent him from time to time sums of money aggregating $112.50. Thereafter he sent him nothing more. Plaintiff then instituted this suit under the Employers' Liability Act, praying for judgment against defendant for $16 a week for 300 weeks, subject to credit of the $112.50 above mentioned.

"The record leaves no doubt that plaintiff was injured in the manner stated. The weight of the evidence shows that the smaller bone in the right leg, about midway between the knee and the ankle, was broken. Defendant, however, urges that the accident did not arise out of the employment, because it resulted from a disobedience of orders, but, if it should be held otherwise, then that he still is not liable, because plaintiff deliberately failed to use an adequate protection or guard against accident provided for that purpose.

"It seems that there was a small sign on the truck cautioning employees to keep their hands and feet inside of it while riding. There is evidence in the record to the effect that plaintiff on several occasions had violated these instructions, and had been warned against doing so. Defendant and his son testify that, when they started on the trip, plaintiff sat on the side of the truck with his feet hanging from the side, and was told by defendant not to ride in that manner. They testified that he obeyed for the time being the order not to ride in such a way, but later that he resumed his former position, and as a result was injured. They testify that there were one or two boxes on the truck, which could be used as seats.

"Granting that this evidence is correct in every respect, still, upon a further consideration of this case, we have reached the conclusion that plaintiff is entitled to relief. The Employers' Liability Act grants compensation to those employed in hazardous occupations for personal injury caused by accident arising out of and in the course of the employment, except when the accident is brought about by one of the causes mentioned in section 28 of the act. Section 1 of Act 20 of 1914; section 2 of Act 38 of 1918. Those exceptions are:

"When the injury is caused: '(1) By the injured employee's wilful intention to injure himself or to injure another, or (2) by the injured employee's intoxication at the time of the injury, or (3) by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him or (4) by the employee's deliberate breach of statutory regulations affecting safety of life or limb.' Section 28 of Act 20 of 1914.

"That the accident arose out of and in the course of the employment appears from the fact that at the very moment it occurred plaintiff was proceeding on a mission for his master under his employment. The mere fact that he was proceeding negligently in the vehicle provided for that purpose, or in a manner therein that

was contrary to instructions, did not place him outside of the scope of his employment. He was still on the mission of his master."

The court further said:

"We are also of the opinion that the defense urged that there was a deliberate failure on the part of plaintiff to use an adequate guard or protection against accident provided by defendant is not well founded. The adequate protection against accident referred to consisted of two empty boxes put in the truck to block the granite that defendant was on his way to get. They doubtless afforded very uncomfortable seats in driving over what apparently was a rough street. But be that as it may, we do not think that they come within the purview of the statute, and that the failure of the plaintiff to obey instructions by sitting where he did does not debar him from recovering."

In the case of Jones v. Landry, 10 La. App. 740, 122 So. 913, the First Circuit Court of Appeal said:

"Under section 28 of Act 20 of 1914, the Workmen's Compensation Law, the burden of proof is on the employer where the defense is the intoxication and deliberate failure to use adequate guard against accident by employee."

The facts in this case are as follows:

"The plaintiff, a young negro woman, was employed by the defendant to operate a moss ginning machine. Her duty was to feed moss to the machine which contained two steel rollers with brackets, or teeth, which enmeshed as the rollers revolved. While so engaged her hand was caught between the rollers and badly mangled, necessitating its removal. * * * "The alleged failure to use the protection afforded her by her employer, is based upon the charge that plaintiff fed the moss to the rollers from the side, instead of from the front, where there is a board about thirty inches wide, called an apron, which, it is said, is intended to protect operators against getting their hands

caught in the rollers. Perhaps this board affords some protection by keeping the body of the operator at a distance from the rollers, but it appears to us as very inadequate. The defendant testifies that he had warned plaintiff against the practice of feeding the moss from the side, but that she failed to obey instructions. Her failure to obey his orders should have resulted in her discharge and incidentally the saving of her hand, but mere disobedience to orders is not sufficient to defeat recovery by an employee, under this section of the law. See Farris v. Louisiana Long Leaf Lumber Co., 148 La. 106, 86 So. 670, and Sears v. Peytral, 151 La. 971, 92 So. 561."

In other jurisdictions, the court, in interpreting a like section of the Compensation Act, the only difference in the wording being that the word "wilful" is used instead of the word "deliberate," as used in section 28 of Act No. 20 of 1914, hold that in order to preclude recovery, under the provisions of the Workmen's Compensation Act, including liability for injuries received through willful failure to use a guard, or safety appliance, there must be something beside a mere voluntary and intentional failure by the workman to use a guard, and that some element of obstinacy, headstrongness, or intentional wrongdoing must be shown. 9 A. L. R. page 1377, see cases cited.

To hold that appellant is barred from recovery, under heading 3 of section 28, Act No. 20 of 1914, we would have to find that he vacated his seat and sat upon his dinner pail, after carefully considering the probable consequences of his moving. There is nothing in the record to justify our so holding. We find therefore that appellant is not barred from recovery, under heading 3 of section 28, Act No. 20 of 1914.

The remaining defense is that appellant,

by his acts, had placed himself outside of his employment by opening his pocket-knife and using it for his own benefit and credit, and is therefore barred from recovery.

The very moment the accident occurred, plaintiff was proceeding on a mission for his master, under his employment, and while it is true that the knife was not being used in same employment, plaintiff was using same to fix his suspenders to prevent his trousers from falling off, not an unusual thing, but a necessary thing for him to do. He was possibly negligent in making use of the knife while riding on a train over a log road, which was known to be none too smooth, and also negligent in using the knife while sitting on his dinner pail; however, the mere fact that he was proceeding negligently in the vehicle provided for him to ride in, did not place him outside of the scope of his employment. He was still on the mission of his master and was not doing anything he was forbidden to do. Sears v. Peytral, supra.

When riding on this train, one might strike a match to light a cigarette, and the jar or jerk of the train cause him to burn his eye. He would certainly not be outside of the scope of his employment. It is not necessary, in order to recover for an accident happening on a train that carries employees to and from their work, that the employee take his seat and twiddle his thumbs the entire time while on the train. Any act not entirely unreasonable, and such as to be expected of an ordinary human being, will not place the employee out of the scope of his employment.

There were three contributing causes to the accident: Sitting on the dinner pail; the open knife; and the jar or jerk of the train.

We think appellant is entitled to recover under the Workmen's Compensation Law of Louisiana.

The evidence shows that all hospital and medical bills up to the date of trial had been paid by appellee, under medical insurance carried by it for appellant, and he is therefore not entitled to any judgment for medical and hospital fees. The record also shows that his knee is stiff to a certain extent. He had complete flexion of about thirty per cent mobility at the time of trial on February 17, 1931.

Appellant was earning at the time of the accident $15 per week, and as there is proof of the total disability of the leg up to the time of trial, he should have judgment for total loss of function of the leg from the date of the accident, September 24, 1930, until February 17, 1931, and for partial loss of use of function of the leg to the amount of 70 per cent from February 17, 1931, until the full expiration of one hundred seventy-five weeks, or until disability ceases.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed, and that appellant, James E. McClendon, do have and recover judgment against the appellee, Louisiana Central Lumber Company, for compensation for one hundred seventy-five weeks, or until disability ceases, said payments to begin as of date October 1, 1931, and in the amounts as follows:

From September 24, 1930, to February 17, 1931, at the rate of $9.75 per week; and from February 17, 1931, on, at the rate of $6.82 per week, with legal interest thereon from due date of each payment; appellee to pay all cost of both courts.