HOOD, Judge.
This is an action against Liberty Mutual Insurance Company, as the insurer of C. W. Vollmer & Company, Inc., for workmen’s compensation benefits claimed to be due because of the accidental injury and death of Lucius Logan, a former employee of the Vollmer Company. The suit was instituted by Mary Gathright, as the natural tutrix of her seven minor children, all of said children being entirely dependent upon the decedent for support. After trial on the merits, the trial court rendered judgment rejecting plaintiff’s demands on the ground that the accident causing the decedent’s death did not occur while he was acting in the course and scope of his employment. Plaintiff has appealed from that judgment.
The evidence shows that on March 3, 1962, Lucius Logan lived at Boyce, Louisiana, and was employed as a truck driver by the Vollmer Company. The employer at that time was engaged in performing earthwork in connection with the construction of a new highway near Boyce, but construction work had been shut down for some time because of inclimate weather during the winter months. The decedent was continued as an employee of the company during the slack period, however, his duties during that period being principally to set out warning flares each afternoon where the work was being done, to pick up the flares the following morning, and to do maintenance work around the project, such as cleaning up equipment. The employer furnished Logan with a pickup truck which he used in the performance of his duties and in traveling to and from his work. This truck was equipped with a two-way short wave radio, and at night it was kept by the decedent at his home.
The decedent finished putting out flares on the highway about 4:00 o’clock on Saturday afternoon, March 3, 1962, and in doing so he completed all of tire duties which he was required to perform that day in connection with his employment. He then picked up plaintiff, with whom he had been living for some time, and together they went shopping at a grocery store in Boyce, this being a personal mission. The trip was made in the above-described pickup truck. About 8:00 o’clock that evening Mary Gath-right and Logan, accompanied by one or two friends, rode in the same pickup truck to the Cool Spot, a lounge or bar located in Boyce, where they consumed some alcoholic beverages which the decedent had purchased. About 10:00 p. m. Logan went outside the building to start the truck, but was unable to do so because the battery had run down. He then arranged for someone else who had an automobile there to take him to a place about four miles away to get a cable jumper, and upon returning with this device he succeeded in starting the motor of the truck. After the motor was started Mary Gathright, at Logan’s request, got into the pickup truck “to cut the engine off.” In attempting to do so, however, she accidentally struck the gear shift lever, causing the truck to leap forward, to strike the decedent and to pin his body between the truck and the building occupied by the Cool Spot bar. The accident occurred about 10:30 p. m. and the decedent died shortly thereafter as a result of the injuries which he sustained. The decedent did not have the permission of his employer to use the truck after 4:00 o’clock that afternoon, either to go grocery shopping or to go to the Cool Spot bar.
*244 Plaintiff contends primarily that Logan was “on call” and under the orders of his superiors twenty-four hours per day, and thus he was acting in the course and scope of his employment at the time the accident occurred. Defendant denies that Logan was “on call” or that he was acting for the benefit of his employer when the accident occurred, but, on the contrary, it contends that at that time he was engaged in purely a personal mission having no connection at all with his employment.
The courts of this State have held that under some circumstances an injury sustained by an employee during a “stand-by” period, that is, during a period of enforced idleness while the employee is required to remain immediately available for a new task to be assigned to him or until unfavorable conditions change so work can be resumed, will be considered as having been sustained by the employee in the course of his employment. Fields v. Brown Paper Mill Co., La.App. 2 Cir., 28 So.2d 755 (Affirmed on Cert., 213 La. 400, 34 So.2d 904); Goins v. Shreveport Yellow Cabs, La.App. 2 Cir., 200 So. 481; McClendon v. Louisiana Central Lumber Co., 17 La.App. 246, 135 So. 754; Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767; Snear v. Eiserloh, La.App.Orl., 144 So. 265.
The test to be applied in determining whether the accident and resulting injury arose out of the employment is clearly set out by our Supreme Court in the frequently cited case of Kern v. Southport Mill, 174 La. 432, 141 So. 19, as follows:
“In determining, therefore, whether an accident ‘arose out of the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer’s business reasonably require that the employee be at the place of the accident at the time the accident occurred?”
In the instant suit, however, the trial judge concluded that the decedent was not “on call” or on “stand-by duty” at the time the accident occurred. Although plaintiff testified that the decedent customarily parked the truck within a few feet of his bedroom window so he could hear and receive calls from his employer over the short wave radio in the truck at night, the superintendent of construction for the employer testified that the radio was not used for calls at night, that the employees were instructed to turn the radio on when they went to work in the morning and to turn it off at the end of the day’s work, and that there was never any need or occasion to call the decedent at night because there was nothing further for him to do on a working day after putting out the flares in the afternoon. The evidence also shows that the truck radio could not have been used after the end of a normal working day because the company did not have anyone at the “base station” to send or to receive calls at night, and that the radio in the truck could not be left on all night because doing so would cause a good battery to run completely down within a period of five hours. We agree with the trial judge that the evidence fails to show that the decedent was on call or on stand-by duty at the time the accident occurred.
Plaintiff contends alternatively, however, that even if it is determined that the decedent was not on stand-by duty or that he had abandoned his employment for a period of time that day, he re-entered his employment and was acting for the benefit of his employer when he went to get the cable and thereafter started the truck. She reasons that in getting the truck started the decedent was safeguarding the property of his employer against vandalism and was making it possible for him to receive work calls over the short wave radio in the truck.
Since it has been determined that the decedent did not receive work calls at night over the short wave radio, we agree with the trial judge that there is no merit *245 to the argument that he was acting for the benefit of his employer in getting- the track started that Saturday night so he could receive such calls. The remaining question is whether he was acting for the benefit of his employer and in the course of his employment in starting the truck so that he could move it to his home and thus watch over and protect it.
In Long v. Hardware Mutual Insurance Company, La.App. 4 Cir., 137 So.2d 486, a case relied on by plaintiff, the injured employee was a delivery truck driver, and his duties required him to maintain his employer’s truck. On the day the accident occurred he drove the truck to a service station to obtain some brake fluid, and while there he left the truck and walked into the station where he accidentally received a pistol shot wound. The accident 'occurring during his regular hours of employment, and the only issue presented, pertinent to the instant suit, was whether he had abandoned his employment by walking into the station. After determining that plaintiff had stopped at the service station “for the sole purpose of purchasing brake fluid for the truck,” and not for any personal reasons, our brothers of the Fourth Circuit held, correctly we think, that the accident occurred in the course of his employment. The facts in the instant suit, however, are far different from those in the Long case. Here, the accident did not occur during working hours, the employee’s duties did not require him to be at the place where it occurred, and his visit to the Cool Spot bar was clearly a personal mission having no connection whatsoever with his employment.
In Bush v. Houston Fire & Casualty Insurance Company, La.App. 1 Cir., 152 So.2d 377, also cited and relied on by plaintiff, the deceased employee i&as on 24-hour stand-by duty, which required that he be available at his home for telephone work calls. He left his home in a utility truck furnished by his employer to go on a personal mission, and the accident occurred as he was returning to his home in that track. The First Circuit Court of Appeal, applying the test set out in Kern v. Southport Mill, supra, held that since the employee was on a personal mission of no concern to his employer, the injury was not sustained in the course of his employment.
Plaintiff has cited other cases to support her position, but the facts in each of those cases are so different from the facts of the instant suit that we do not consider the additional cases cited to be applicable to the issue presented here.
While there can be no doubt that in starting the truck that night Logan intended to drive it to his home and to protect it against theft or vandalism, it also is apparent that his principal purpose in getting it started was to provide transportation for himself, Mary Gathright and perhaps his guests from the bar they had been patronizing to their homes. We think the evidence shows that at the time this tragic accident occurred Logan was not about his employer’s business, but, on the contrary, he was on a personal mission not in any way connected with his employment. Also, the necessities of the employer’s business did not reasonably require that Logan be at the place of the accident at the time it occurred. Applying the test set out in the Kern case, therefore, we conclude, as did the trial judge, that the accident involved here did not occur in the scope of the decedent’s employment, and accordingly that plaintiff’s demands for compensation benefits were properly rejected.
For the reasons herein assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed to plaintiff-appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.