WILLIE EDWARDS v. STATE.

No. A-8876.   Sept. 6, 1935.
(48 Pac. [2d] 1087.)

16

18

22

24

26

28

J. M. Roberts, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen. (Frank Watson, of counsel), for the State.

DOYLE, J. (after stating the facts as above).

This appeal is from a judgment of the district court of Pittsburg county, pronounced and entered October 3, 1934, in pursuance of the verdict of the jury finding defendant Willie Edwards guilty of murder and assessing his penalty at death.

The first assignment challenges the sufficiency of the information. The charging part of the information is as follows:

"That Willie Edwards did, in Pittsburg county, and the state of Oklahoma, on or about the 27th day of September in the year of our Lord, One Thousand Nine Hundred and Thirty-three and anterior to the presentment hereof, then and there unlawfully, willfully, wrongfully and feloniously, without authority of law and with a premeditated design to effect the death of one Louis Spaunherst, make an assault in and upon the said Louis Spaunherst with a certain weapon, to wit, a pocket knife being then and there a sharp instrument and weapon then and there had and held in the hands of him, the said Willie Edwards, and did then and there with said knife and weapon so had and held in his hands as aforesaid, unlawfully, willfully, wrongfully and feloniously and without authority of law, and with a premeditated design to effect the death of the said Louis Spaunherst, strike, stab and force said knife weapon, at, into and upon the body of him, the said Louis Spaunherst, then and there and thereby in-

flicting certain mortal wounds in and upon the said Louis Spaunherst of which said mortal wounds so inflicted as aforesaid, the said Louis Spaunherst did then and there on the said 3rd day of January, 1934, die, as was intended by the said Willie Edwards he should do, with the unlawful, wrongful and felonious intent then and there on the part of him, the said Willie Edwards to kill and murder the said Louis Spaunherst."

To this information the defendant demurred upon the statutory grounds for demurrer, and that it. is ambiguous and is void for uncertainty, which demurrer was overruled by the court.

The information is in the ordinary form often approved by this court. It might possibly be improved in form by insertion after the words "then and there" and before the words "on the said Third day of January, 1934" the words "languish and languishing did" and by striking the word "said."

From the language used no person of common understanding could be mistaken as to what charge was intended to be made against the defendant.

Under our Criminal Code, no information is insufficient by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. Section 2892, St. 1931.

The information is sufficient, and the demurrer thereto was properly overruled.

The second assignment is error in overruling the defendant's motion for a continuance.

When the case was called for trial, the defendant filed a motion for a continuance. His motion and affidavit con-

tained all the formal allegations required by law, and the following statement: That he is unable to proceed to trial at this time for the want of the evidence of one Ola Pope, a material witness. That a subpoena duly issued for said witness was returned by the sheriff with notation that witness cannot be found in this county, and the defendant has just been informed and believes that he is somewhere in Lincoln county, Okla. That defendant expects to prove the following facts by this witness:

That said Ola Pope was an eyewitness. That his attention was attracted by a loud voice and he turned and saw Mr. Spaunherst striking at Willie Edwards; that he saw the defendant strike back. That he heard Mr. Spaunherst holler and saw him turn and go away; that the defendant did not follow or make any attempt to strike him again. That at the time Mr. Spaunherst was striking at the defendant, said defendant was backed up against the machine at which he worked; that said witness does not know whether or not Mr. Spaunherst had anything in his hand. That defendant believes the above to be true, and that said evidence cannot be furnished by other witnesses; that this affidavit for continuance is not made for delay, but that substantial justice may be done.

The state, in resistance to the motion for a continuance, filed affidavit of the county attorney wherein affiant states that: Ola Pope would not testify in the trial of this cause as alleged by defendant in said affidavit; that affiant herein heard the testimony of Ola Pope at the preliminary hearing in this cause; that Ola Pope then testified under oath that he did not see Louis Spaunherst, deceased, hit or hit at the defendant, Willie Edwards, at any time; that this affiant took a statement of Ola Pope immediately after the stabbing involved in this case; that said state-

ment is attached hereto, and it shows that Ola Pope would not testify as defendant now declares that he would testify. That this affiant has had a search made for Ola Pope in Lincoln county by officers of the State Penitentiary, and it was reported by said searchers that Ola Pope could not be found in said county; that Ola Pope's testimony is not material to the case of defendant. The excerpts from the testimony of Ola Pope as a witness for the state and whose name and post-office address are indorsed on the information in this case wherein said witness refused to answer as to where he threw the knife, and wherein he stated, "I don't know anything," is attached to the county attorney's affidavit.

When application for a continuance has been denied, this court will look to the entire record with a view of determining whether an abuse of discretion is shown. The information was filed July 23, 1934. The list of witnesses to be called in chief together with their post-office addresses was served the 20th day of September, six days before the case was called for trial. The theory of the prosecution was that the defendant stabbed Spaunherst without any provocation. It appears that on the day of the affray the county attorney investigated the matter; however, no prosecution was instituted before Mr. Spaunherst's death fourteen weeks later. It also appears that there was no proof of the corpus delicti independent of the defendant's admissions, and if counsel for the defendant had not waived his constitutional right to notice of the name and address of the medical witness whose testimony tended to prove the corpus delicti, the prosecution would have failed. The defendant is a convict; all the witnesses called by the state were officers of the penitentiary and employees of the Seminole Manufacturing Company, all residents of McAlester, and could be called at any time.

Every person charged with crime is entitled to a fair trial according to the due and orderly course of the law. The right of every person charged with crime to have compulsory process for obtaining witnesses in his own behalf is guaranteed by the Constitution (Bill of Rights, § 20); and this involves, as a matter of course, the time reasonably necessary to prepare for trial and to find and produce testimony in his defense. It is not, however, a matter of which the defendant can complain that the trial is speedy, if he has had time for preparation and is ready for his defense. Continuances ought always to be granted, when, from the showing made, justice requires it; this to enable the defendant to procure all legal and competent evidence necessary for the fair presentation of his defense, if he has used due diligence to obtain the same. Noel v. State, 17 Okla. Cr. 308, 188 P. 688; Westbrook v. State, 14 Okla. Cr. 423, 172 Pac. 464.

The defendant made every effort possible to secure the attendance of the absent witness, and he was not allowed the time reasonably necessary to prepare for the trial which resulted in his conviction. In view of the materiality of the testimony of the absent witness and on account of the peculiar circumstances of the case, we are convinced that the denial of the defendant's motion for a continuance was in manifest abuse of judicial discretion.

A number of alleged prejudicial errors are assigned upon exceptions taken to rulings of the court upon the admission of evidence, and the exclusion of evidence. However, the main question in this case is whether there was upon the whole sufficient evidence to warrant a conviction for murder.

The testimony of the witnesses for the state tended to show admissions or alleged confessions on the part of the

defendant that he struck the deceased with a pocket-knife.

Turner, the second witness for the state, testified that after the affray he found a knife and turned it over to Mr. Parks; that he asked the defendant if he cut Mr. Spaunherst, and he said he did; that he asked him why, and he made no answer, and he asked him if that was his knife, and he said, "Yes."

J. W. Phillips testified that in the presence of Jess Dunn, deputy warden, he asked the defendant why he cut Mr. Spaunherst, and the defendant answered because Mr. Spaunherst had changed his work. That the county attorney asked the defendant what he had to offer for a defense, and the defendant said he did not care to make a statement.

Jess Dunn, deputy warden, testified that he asked the defendant why he stabbed Mr. Spaunherst, and the defendant said it was because Mr. Spaunherst had changed his job; that he showed the pocketknife to the defendant and asked him if that was the knife he cut Spaunherst with, and the defendant said, "Yes."

H. H. Sherrill testified that he was present in the warden's office when Frank Watson, county attorney, asked the defendant to state what he had to say concerning the case, and the defendant said he did not have anything to say. Then he asked if the man was dead, and the county attorney said it was no time to make a statement after the man died; then the defendant said if he died he would probably want to talk then; that the county attorney showed the defendant a knife and asked him if that was the knife he stabbed the man with, and the defendant said he never saw the knife before; that the defendant practically admitted that he did it, but would not make a statement until after the man died.

Doctor J. H. Munn was the last witness called in chief; his name was not indorsed on the information, and his name and post-office address had not been furnished to the defendant. This witness was called to prove the corpus delicti.

Counsel for the defendant waived objection; thereupon he testified that he gave first aid to Mr. Spaunherst in the penitentiary hospital; that there was a stab wound in the left side on the border of the sternum; that Mr. Spaunherst died some time in January; that he thought his death was due to infection following the stab wound.

In every criminal prosecution the burden rests upon the state of proving the corpus delicti beyond a reasonable doubt. In prosecution for homicide the corpus delicti consists of two fundamental and necessary facts: First, the death; second, the criminal agency of another as the cause; as applicable to this case, it was necessary to show, first, that the deceased died from the effects of a wound, and, second, that the wound was unlawfully inflicted by the defendant.

It is well settled that extrajudicial confessions are those which are made by the defendant out of court, whether to an official or nonofficial person, and such confessions in order to be admitted must be entirely free and voluntary.

The general rule is that in the absence of other evidence that a crime has been committed, it is improper in the trial of a homicide case to admit in evidence a confession of the defendant.

In the case of Mays v. State, 19 Okla. Cr. 102, 197 Pac. 1064, 1068, it is said:

"This court adheres to the rule that a conviction cannot be had on the extrajudicial confessions of the defendant without independent evidence of the corpus delicti, and, before such confessions should be admitted, there should be evidence prima facie sufficient to show that the offense to which the confession relates has been committed. The court must decide in the first instance this question. However, the decision of the court does not bind the jury, as the province of the court in such particular is only to determine whether sufficient evidence has been adduced to go to the jury for their determination. In passing upon the evidence submitted to them the jury must first determine beyond a reasonable doubt that the crime has been committed; then they are at liberty to give the alleged confession such weight as it is entitled to, taking into consideration the circumstances surrounding it and the extent to which it has been corroborated."

Deputy Warden Dunn, on cross-examination, was asked if convicts working in the factory were searched every morning, noon, and night to see if they had knives on them. The court sustained the state's objection as not proper cross-examination. This evidence was proper and competent to be considered by the jury for the purpose of tending to show that the defendant did not have the knife when the altercation started. It was proper cross-examination, and its exclusion was error.

Assistant Deputy Warden Phillips, on cross-examination, identified the book of rules and instructions to convicts to show that under the rules convicts must be obedient and answer questions of officials and that if they fail or refuse to answer, they are punished. The court sustained the state's objection and excluded the rules. The defendant moved to strike the testimony of the officials showing admissions or confessions by the defendant because same were not voluntary because under said rules the defendant's answers to the questions asked were given

in duress. We think the court erred in excluding the book of rules; however, the motion to strike was properly overruled. Whether or not the alleged confessions of the defendant were voluntary was for the jury to determine.

The defendant contends that the court erred in excluding the testimony of the first three witnesses called on the part of the defendant, Jim Thompson, Albert Ellison, and Paul Johnson, respecting the disposition of the deceased to become violent without provocation, and the reputation of the deceased for being turbulent and quarrelsome and testimony tending to show that he had difficulties with other inmates and to show that the deceased had threatened "to kill some of the niggers for talking back to him," and to show the defendant knew about said threats.

Generally speaking, where a homicide occurs under such circumstances that it is doubtful whether the act was committed maliciously or from a well-grounded apprehension of danger, testimony tending to show the general reputation of the deceased as becoming violent and quarrelsome or of threats made by the deceased is always admissible in order to determine whether the defendant had reasonable cause to apprehend great personal injury to himself. The defense interposed and relied upon by the defendant was that he acted in his necessary self-defense. If there had been some evidence tending to show self-defense at the time this testimony as to the reputation borne by the deceased was offered, and as to having made threats against the defendant, then it was manifestly error to exclude this testimony. Mulkey v. State, 5 Okla. Cr. 75, 113 Pac. 532.

On the other hand, if the defendant had not offered any evidence tending to support his claim of self-defense,

then there could be no prejudicial error in denying the introduction of that testimony until the defense upon which the defendant relied was sufficiently developed to authorize its admission for the purpose of added support to the defendant's plea of self-defense. It is only when a showing of self-defense is made that evidence of the reputation of the deceased for violence and turbulency and of threats made by the deceased become relevant and material.

It is strenuously urged that the verdict is manifestly contrary to law and to the evidence and is a gross injustice which should be righted by this court.

Our Code provides that a plea of not guilty puts in issue every material allegation in the information. Section 2962, St. 1931. It also provides that a defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be acquitted. Section 3064. It further provides: "Upon a trial for murder, the commission of the homicide by the defendant being proven, the burden of proving circumstances of mitigation, or that justify or excuse it, devolves upon him, unless the proof on the part of the prosecution tends to show that the crime committed only amounts to manslaughter, or that the defendant was justifiable or excusable." Section 3076.

Under this provision, if the prosecution proves the death of the deceased and the fact that he was killed by the defendant, without proving circumstances of mitigation or tending to show justification or tending to show that the crime committed only amounted to manslaughter, then the burden is upon the defendant, if he contends that he was justifiable, of producing evidence showing that fact. The quantum of evidence necessary for that purpose

is fixed by law and is such as is sufficient to raise reasonable doubt upon that issue.

No witness for the state heard the altercation or saw the affray. The case against the defendant rested solely on circumstantial evidence, including certain admissions made by him on the day of the affray together with his testimony as a witness in his own behalf. The defendant's admissions as testified to by the witnesses for the state were, when asked if he cut Mr. Spaunherst, he answered, "Yes'"; asked why he cut Mr. Spaunherst, he answered, "Because he had changed his work"; asked if that was his knife, he answered, "Yes."

Mere admissions of inculpatory facts are not necessarily confessions, and when a person only admits certain facts from which the jury may or may not infer guilt, there is no confession. The facts the defendant admitted could have been true and not be inconsistent with his innocence of the crime of murder; he made the admissions, not for the purpose of conceding that he was guilty or with any view to confess his guilt, but in the line of a denial of guilt, not an express, but an implied, denial.

Our Penal Code provides:

"A design to effect death is inferred from the fact of killing, unless the circumstances raise a reasonable doubt whether such design existed." Section 2217, St. 1931.

The burden of proving intent to kill on the part of the defendant is upon the prosecution. The general rule is that if a man uses a deadly weapon, not in self-defense, and life is taken, he is presumed to intend the natural, probable and usual consequences of his act. However, the presumption arising from the character of the weapon used is not conclusive as to intent. The information does not charge the use of a deadly weapon; the words used are:

"With a certain weapon, to wit, a pocket knife, being then and there a sharp instrument and weapon." Considering the character of the assault and the weapon used and the fact that the deceased did not die until fourteen weeks after the affray, we think the evidence on the part of the state was insufficient to show an intent to kill and murder and was prima facie sufficient only to show manslaughter in the first degree.

It follows that the burden was not on the defendant to show affirmatively that he was free from fault in bringing on the difficulty, and when the ingredients of self-defense have been established, the burden is on the state to show that the defendant was not free from fault, unless it has been shown that the killing was unnecessary for self-defense.

The testimony on the part of the defendant, and it is uncontradicted, overwhelmingly established the fact that the deceased was the aggressor. The testimony of the defendant that the deceased provoked the difficulty and during the altercation assaulted the defendant with a pocket-knife and that the defendant wrested the knife from him, that the deceased then pulled from the scabbard on his belt a pair of scissors, and attempted to strike the defendant with them, and that then the defendant struck the deceased with a pocketknife, is uncontradicted.

The testimony of every eyewitness supports the defendant's testimony, and it is not disputed. The defendant testified that when the deceased struck at him with the scissors he struck back with the knife; that his intention was to hurt and not to kill.

In rebuttal, the state called Ed Roselle, an instructor in the prison factory, who testified that he never saw Mr.

Spaunherst use the knife, Exhibit A, or have it in his possession, but he did have a pearl-handled pocketknife like it a day or two before the affray. That Mr. Spaunherst carried scissors, eight or ten inches in length, in a scabbard on his belt. Three other witnesses testified that Mr. Spaunherst's reputation was that of being a good kind-hearted instructor. There is not a scintilla of evidence in rebuttal tending to traverse or contradict the testimony on the part of the defendant.

We have carefully examined the record, and in the consideration of this case, we have tried to exercise that degree of care that the due administration of justice demands in all cases where the death sentence is imposed. It is apparent from the record before us, and we see no escape from the conclusion, that the evidence is wholly insufficient to sustain the conviction. Upon such evidence, it is difficult to understand upon what ground the jury could render a verdict of guilty and assess the death penalty.

A fair trial is guaranteed to all persons, whether guilty or innocent, regardless of race or color, free from any appeal to prejudice, and it is the duty of the courts to uphold this guaranty, and this duty is emphasized in a capital case, where a colored man is placed upon trial before a jury of white men.

Upon the record before us, and for the reasons hereinbefore stated, we are clearly of the opinion that the defendant did not have that fair and impartial trial to which he was entitled under the law. The spirit of unfairness throughout the trial is apparent, and our conclusion is that it would be a reproach to our criminal jurisprudence if the judgment were permitted to stand.

The judgment of the trial court is therefore reversed, and the case remanded, with direction to set aside the judgment of conviction.

DAVENPORT, P. J., and EDWARDS, J., concur.