Estella THOMPSON, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–13050.

Court of Criminal Appeals of Oklahoma.

Oct. 18, 1961.

W. E. Maddux, James L. Sontag, Nowata, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Plaintiff in Error, Estella Thompson, hereinafter referred to as defendant was charged with the offense of murder in the District Court of Nowata County, Oklahoma. She was tried by a jury and found guilty of manslaughter in the first degree and her punishment was fixed at 6 years in the State Penitentiary at McAlester, Oklahoma. From this judgment and sentence she has perfected a timely appeal to this court. Briefly the facts presented by the state are that sheriff Arch Sequichie received a call from Estella Thompson. She stated: "I shot Freddie," and that she further stated that she didn't know whether he was alive or dead. Sheriff Sequichie immediately notified an ambulance and directed them to the home of Freddie Thompson. Accompanied by deputy, Arthur Johnson, Sequichie arrived at the home of Estella Thompson about 12:30 p. m. He asked her where her husband was and she pointed to the building adjacent to her home. Sheriff Sequichie entered the premises where he found Freddie Thompson in an unconscious condition. He observed that there was a .32 caliber bullet wound three inches from the left breast of the unconscious man. The sheriff accompanied the ambulance drivers to the hospital where Freddie Thompson was pronounced dead and returned shortly thereafter to the home of Estella Thompson where at his request Estella Thompson took him to the kitchen where the shooting occurred and at his further direction produced a .32 caliber Smith and Wesson revolver from a clothes hamper in an adjacent room. She identified this as the weapon with which she had

shot her husband, Freddie Thompson. Deputy Sheriff, Ray Frieden, testified that he accompanied the sheriff to the home of Estella Thompson on August 4, 1960, and arrived at about 12:30 p. m. He further testified that when the sheriff left with the body of the deceased that he remained at the home of Estella Thompson and that while there she detailed the circumstances under which the fatal shooting occurred and the events leading up to it. He testified that she related that her husband was frying some sausage at the stove and that they started quarreling about the frying and that Freddie Thompson slapped her. She thereafter went into another room, took a gun from a paste board box and returned to the doorway of the kitchen which was about 12 feet from her husband and shot him. Witness, William Lane testified that on the day of the slaying he was sitting on his brother's front porch when he saw Estella Thompson and one of her children approaching from the direction of Estella Thompson's home and that she entered the house and advised him that she "shot Freddie". Witness further testified that before Estella Thompson called the sheriff it was suggested that she call a doctor, but that she replied: "Where the son-of-a-bitch is going he don't need a doctor". The first witness called for defendant was Alfred Lee Senior who testified that he was acquainted with the deceased and had been a drinking companion of his for a number of years. Defendant sought to prove by this witness specific arguments between defendant and the deceased. The county Attorney objected to the introduction of these specific events and the court excluded them. Defendant excepted to the ruling of the court. The defense next called Selman Johnson, father of the defendant, who testified that he had known the deceased for a number of years and had lived in the Thompson home for a period of 6 months. This witness testified that the deceased was a drinking man and had fought with the defendant on one occasion when he was present. County Attorney objected to the introduction of the details of this altercation and the trial court

excluded it. The next two witnesses called were Mr. and Mrs. Leroy Lane, who testified that they were home on the day of the fatal shooting. They further testified that they did not hear any statements made by Estella Thompson to William Lane, and that defendant said she had shot Freddie and wanted to use the phone.

Clarence Smith, nephew of the defendant, testified that he was washing clothes near the Estella Thompson home and that he heard an argument between the deceased and defendant and a shot. He further testified that he saw the deceased come out the front door of the house and that the deceased had blood stains on his clothing and appeared to be gripping something in his hand. He stated that Estella Thompson ran out the back door of the house and "he" opened the door to the deceased's home and that the deceased went in and lay down on the bed. This witness did not relate any details of the argument between the defendant and the deceased. Roy Furrow testified that he was an employee of the Nowata police department and that on several occasions he had been called to the residence of Freddie and Estella Thompson to quell a disturbance. He further testified that he had arrested the deceased several times.

Estella Thompson testified in her own behalf. She related that for the past 3 years she and the deceased had fought on several occasions. When she attempted to testify as to the specific instances the county Attorney objected and the court sustained the objection. The defendant further attempted to testify as to the drinking habits of the deceased but an objection was sustained to this line of testimony. She was then permitted to testify that in December of 1959, the deceased beat her with a .22 caliber rifle until the stock came off and that he threatened to kill her, but that the police were called and he was placed under arrest and taken to jail on that occasion. She further testified that deceased had choked her on a number of occasions, but was not allowed to testify as to the specific details. She then testified that the deceased was six feet, three inches tall and weighed

185 pounds and that she weighed 100 pounds. At this point the defendant testified to the events of August 4, 1960. She stated that the deceased was in her home cooking sausage when she returned from the neighbors and that she turned the fire out from under the sausage and advised him that the food was for the children; that he became abusive and struck her a number of times and that the fight which started in the kitchen terminated in the adjacent bedroom where, after the deceased had knocked her down several times she took a loaded revolver from a box and directed him to leave. She testified that he returned to the kitchen and started to cook the sausage but that as she approached the door to the kitchen he cursed her and raised his hands and said: "You son-of-a-bitch, I'll get you". She testified that she fired the gun and fled from the premises to report the incident to the police. The witness then testified that she was afraid of the deceased at the time the shot was fired and that the reason she was afraid of him was that he had "beat me with boards and sticks". She then displayed scars on her forehead; a bald spot and knot on her head, allegedly inflicted by the deceased on her person. She specifically denied ever making the statement testified to by witness Lane and she denied intending to kill Freddie Thompson at the time the shot was fired. There is but one assignment of error urged by the defendant as grounds for reversal and it relates to the exclusion of specific acts of violence by the deceased toward her person prior to the homicide. In support of this contention counsel for defendant further argues that since he had announced to the court that self defense would be interposed, under the ruling set forth in Edwards v. State, 58 Okl.Cr. 15, 48 P.2d 1087, 1088, the court committed reversible error.

 The attorney general agrees that the case of Edwards v. State, supra, succinctly sets forth the law applicable in the case at bar. In the Edwards case it was stated:

"Where in a homicide case, self-defense is pleaded, and there is evidence tending to support the same, specific acts of violence on the part of the deceased may, if known to the defendant prior to the homicide, be shown in evidence. * * * In a prosecution for murder, it is only when a showing of self-defense is made that evidence of the character and reputation of the deceased for violence and turbulency and of threats made by the deceased becomes relevant and material."

 We observe from a detailed examination of the record in this case that neither the evidence on behalf of the state nor the testimony offered on behalf of the defendant raised to any degree the question of self defense, and that it was only after the court had repeatedly excluded specific acts of violence allegedly committed by the deceased against the person of the accused that the defendant testified to the events occurring immediately prior to and during the fatal altercation. It is likewise clear that after the defendant had testified to the circumstances surrounding the slaying of August 4, 1960, that she was permitted to offer testimony as to acts of violence against her person by the deceased prior to the time of the homicide. The record does disclose that the state had met their burden of proof by establishing the death of Freddie Thompson and that he was killed by the defendant. In the case of Hawkins v. United States, 3 Okl.Cr. 651, 108 P. 561, 566, the court said:

"To make a prima facie case of murder under this statute the prosecution is required to prove only two facts; namely, the death of the deceased, and the fact that he was killed by the defendant. If each of these facts is proved beyond a reasonable doubt, and without disclosing facts sufficient to raise a reasonable doubt as to whether the homicide was only manslaughter or as to whether it was justifiable or excusable, then prima facie the defendant is proved guilty of murder. Thereupon the burden of proof shifts to the defendant; and to discharge it he must produce evidence sufficient in quality

and quantity to raise a reasonable doubt, either as to the degree of the homicide, or as to whether he was justifiable or excusable, failing in which a conviction for murder is warranted. If, however, the defendant does produce evidence sufficient to raise such reasonable doubt, then the burden returns to the prosecution, and to warrant a conviction for murder it must overcome such doubt thus engendered by proof beyond a reasonable doubt of the existence of each essential element of the crime."

■ ■ Under all of the authorities cited by both the state and the defendant it is clear that specific acts of violence by the deceased toward the accused are admissible only after some competent evidence tending to establish that the homicide was committed in the necessary self defense of the accused and that before such specific acts may be admitted the proper predicate must be laid. Evidence that the deceased was a person of violence and that such fact was known to the accused prior to the time of the slaying or evidence that the deceased had committed specific acts of violence toward the accused are admissible only as tending to show that the accused was in fear of death or great bodily injury at the time the homicide occurred. If there is no evidence in the record that the defendant acted in necessary self defense in taking the life of another then it is immaterial that the deceased was a drunkard, a man of violence, or that he was of poor moral character. It is no less murder to take the life of a thief without just cause or excuse than to take the life of a law abiding person. Statements of counsel that the defense will be self defense cannot be treated as evidence sufficient to lay the predicate for the introduction of a quarrelsome reputation of the deceased, or of specific acts of violence committed by the deceased against the person of the accused prior to the homicide, for statements of counsel are not competent evidence. In the case at bar there was only one witness who could relate the circumstances surrounding the fatal shooting of Freddie Thompson. This witness was the defendant, Estella Thompson. Had counsel wished to introduce specific acts of violence committed by the deceased towards the accused prior to the homicide, he could have done so by placing her on the stand and having her first relate the circumstances surrounding the slaying. Thereafter, had the court excluded evidence of specific acts of violence by the deceased towards the accused, the same would have constituted error.

■ There is sufficient evidence to support the verdict of the jury and for the reasons above set forth the same is affirmed.

NIX, P. J., and BRETT, J., concur.