George MAYBERRY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14215.

Court of Criminal Appeals of Oklahoma.

Jan. 22, 1969.

J. Carpenter Hughes, Hobart, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

The Plaintiff in Error, George Mayberry, hereinafter referred to as "defendant", was charged by information in the District Court of Jackson County with the crime of Murder. The information alleged that on or about February 27, 1966 the defendant and one Eugene Rogers made an assault with a knife upon a Tommie Ree Robinson with the intention of effecting the death of this victim, and that they inflicted certain wounds upon Robinson with the knife, from which said victim died on that same date.

The defendant came on for trial by a jury on August 15, 1966. On that same date the jury returned a verdict finding defendant guilty of the included offense of manslaughter in the first degree and assessed his punishment at 18 years imprisonment in the state penitentiary. Motion For New Trial was filed on defendant's behalf and same was overruled by the court on August 26, 1966. On that same date the court entered formal judgment and sentence pursuant to the jury's verdict. It is from such judgment and sentence that this appeal has been perfected.

In his motion for new trial, defendant set forth nine assignments of error committed in his trial. However, in his brief, defendant argues substantially two propositions. First, that the corpus delicti was not proved; and secondly, prejudicial errors caused in the County Attorney's closing argument.

Defense counsel states in defendant's brief, "It is my opinion that the jury, from the evidence presented could only guess at the cause of death of the said Tommie Ree Robinson, he could have been killed in the automobile wreck or he could have been killed by I. V. White who shortly after the death of the said Tommie Ree Robinson made an extrajudicial confession that he had killed him"; which statement goes to

defendant's first proposition that the corpus delicti was not proved.

■▬ Quoting from Edwards v. State, 58 Okl.Cr. 15, 48 P.2d 1087, this Court said in Wyatt v. State, Okl.Cr., 410 P.2d 86, 91:

"In every criminal prosecution the burden rests upon the state of proving the corpus delicti beyond a reasonable doubt. In prosecution for homicide the corpus delicti consists of two fundamental and necessary facts: First, the death; second the criminal agency of another as the cause; as applicable to this case, it was necessary to show, first, that the deceased died from the effects of a wound, and, second, that the wound was unlawfully inflicted by the defendant."

In the instant case, the death of Robinson was first established through the testimony of Dr. Shelton Poster, who was a medical officer in the U. S. Air Force. Dr. Poster was the Medical Officer of the Day at the Altus Air Force Base Hospital when the deceased was taken to that hospital after he was stabbed. In answer to the question on direct examination, Will you tell this Court, please, sir, what you found?" Dr. Poster replied, "When I first found him he was lying on the floor; there was blood pretty much on his clothing; and there was no evidence of life. There was no evidence that he was breathing; no evidence of a heart beat or pulse; and no heart sounds. The pupils of his eyes were fixed and dilated, which is consistent with no living vital functions."

It seems most logical for the jury to conclude from the Doctor's statement that Tommie Ree Robinson was dead, when the Doctor first saw him. Such being the fact derived, we must conclude that the first requirement in the proof of the corpus delicti, "the death" was established. It next becomes necessary to determine the criminal agency of another as the cause of the death. Or, in other words, "What caused Robinson's death?"

The State's witnesses: Sylvester Hays, Mary Ann Wright, Celela Hays and Carolyn Robinson, the victim's wife, all testified to the facts which preceded the fatal blow, as well as to what they observed take place, outside the Blackout Cafe in Altus, Oklahoma. The testimony of these witnesses was sufficiently consistent to convince the jury that the assault occurred, and that defendant and Eugene Rogers, caused an assault upon the deceased. The witnesses testified that Robinson and his party had left the Blackout Cafe; that the deceased, Robinson, and Sylvester Hays were the last of their party to leave the cafe; that as Robinson was about to enter his automobile with his wife, defendant came outside the cafe, uttered a statement and advanced toward Robinson with an open knife. Their testimony developed that the deceased retreated, but the defendant and Rogers attacked him, knocked him to the ground and kicked him. The witnesses all testified that the defendant struck the deceased with whatever he had in his hand, which appeared to be a knife; that the deceased got to his feet bleeding and a few seconds later fell to the ground unconscious. Then the wife of the deceased and his friends loaded him into the car and proceeded to the Altus Air Force Base Hospital, where Dr. Poster later pronounced him dead.

Another incriminating fact was developed when it was shown that defendant disposed of his pocket knife after the stabbing occurred, by giving it to one of his friends, William Johnson. Defendant admitted in his own testimony that such happened, but could give no reasonable explanation for doing so. Defendant's second proposition concerns the color of the knife, and the remark the prosecutor made in reference to it.

On direct examination, Dr. Poster described the wounds he observed on the deceased, as follows: "There was a wound over the right collarbone, and I believe also a wound in the abdomen; the umbilicalis." The prosecutor then asked, "If

you will, Doctor, could you tell this Court just what was the cause of death?" The doctor replied, "The cause of death was most likely from just massive bleeding." He explained further that the bleeding was both internal and external bleeding. When the doctor was asked to describe the puncture in the vicinity of deceased's collarbone, he replied: "to me it was circular, about one and one-half centimeters in diameter. It might have been bigger than that; it was deep, penetrating." The prosecutor then asked, "Is it your testimony, Doctor, that this particular wound was the cause of death?" The doctor answered, "Yes, sir, most likely this was the cause of death."

On cross-examination the doctor admitted that he did not probe either wound, nor make any detailed examination other than visual, but he related that his visual examination was sufficient for him to determine that the wound in the vicinity of the collarbone was deep and penetrating.

We have examined the record before the Court and find only two references made to what defendant relates as an "automobile accident", which he contends could have caused the death of deceased. On cross-examination Mrs. Robinson was asked, "And on the way to the hospital were you involved in an automobile accident?", to which she replied, "Well, we side swiped a post but it didn't stop the car. We got no scratches." She was then asked, "Well, you did run into something?", and she answered, "We side swiped a post when we turned the corner." Defense counsel then inquired, "You went on to the hospital?", to which the witness replied, "We kept on going; we didn't stop." Jeweline Garland was offered as a defense witness, who testified that she heard Hays report that his car had been in an accident. Other than these two witnesses nothing was offered to substantiate defendant's contention that the deceased could have been killed in an automobile accident. This slight reference to a possible collision is not sufficient to sustain de-fendant's theory of accident. Nonetheless, the jury seemed not to be impressed with defendant's effort to show the cause of death to have been anything other than the knife wound sustained by deceased.

■ From the testimony contained in the record before this Court, we are of the opinion the State sufficiently showed that the agency which caused the death of Tommie Ree Robinson was the knife wound inflicted by defendant. Consequently, we must hold that defendant's proposition, that the corpus delicti was not proved, is without merit.

Title 21 O.S.1961, § 693, provides:

"No person can be convicted of murder or manslaughter, or of aiding suicide, unless the death of the person alleged to have been killed and the fact of the killing by the accused are each established as independent facts beyond a reasonable doubt."

■■ This Court stated in Pettigrew v. State, Okl.Cr., 346 P.2d 957, 966:

"Direct and positive proof is not essential to establish the corpus delicti, and it may be proved by circumstantial evidence. When it is proved by circumstantial evidence, the question should be submitted to the jury along with other questions of fact in the case, as to whether or not the state has established the corpus delicti beyond a reasonable doubt. "Where a dead body is found with marks of violence upon it, or other circumstances that indicate that deceased came to his or her death by unnatural or violent means, proof of such fact, independent of defendant's confession, establishes the corpus delicti in a murder case." See also: Osborn v. State, 86 Okl.Cr. 259, 194 P.2d 176, 178.

In the instant case, the dead body was described by the doctor as having marks of violence on it. Also, the death was established by Dr. Poster. The cause for the marks of violence, which resulted in Robinson's death, was sufficiently testified to by competent witnesses. That testimony

clearly established the cause resulted from defendant's actions. The cause for Robinson's death, as well as the criminal agency causing that death, was sufficiently established by both direct and circumstantial evidence to clearly establish the corpus delicti.

Defendant's second proposition contends the county attorney made prejudicial remarks in his closing argument which inflamed and prejudiced the jury. This contention has no basis of fact.

 In the first instance, the jury found defendant guilty of the lesser included offense of first degree manslaughter, instead of the charge of murder with which defendant was confronted. Secondly, the casemade does reflect that one of the witnesses, William Johnson, testified that when the defendant gave him the pocket knife, he thought it's color was red. Insofar as the defendant testified that his pocket knife was white, Johnson's testimony could only lead one to believe that if such were true, then the knife was made to appear red by some substance, which appearance in this case could only have been caused by blood. The prosecutor is entitled to draw reasonable conclusions in his closing arguments, if those conclusions are based upon the evidence presented to the jury. In this case such conclusion was certainly *not unreasonable*, so the defendant's second proposition is found to be without merit.

Likewise, defendant's effort to show that I. V. White admitted killing Robinson is entirely without support. White denied having made the statement, and the other references to the contention are pure hearsay.

Having carefully considered the casemade filed in this case, we are impressed with the array of character witnesses presented by defendant in his own behalf. Consequently, this is one of those cases wherein the decision is reached with some regrets, but insofar as we are bound to consider the appeal based upon the record presented and apply the law to the facts contained therein, we have no alternative in this case but to affirm the decision of the trial court, as reached by the jury.

We reach the conclusion that the judgment and sentence of the trial court was reached fairly; that the defendant received a fair trial in accordance with due process of law; and that the evidence was sufficient to sustain the conviction for first degree manslaughter.

We are therefore of the opinion that the judgment and sentence in this case should be, and the same is therefore, affirmed.

Affirmed.

NIX, and BUSSEY, JJ., concur.