**Seth Thomas SPEEGLE, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–551.**

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1976.

Richard A. Hoffman, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Alan Foster, Legal Intern, for appellee.

OPINION

BUSSEY, Judge.

Appellant, Seth Thomas Speegle, hereinafter referred to as defendant, was charged in the District Court, Tulsa County, Case No. CRF–75–523, with the offense of Manslaughter in the First Degree in violation of 21 O.S.1971, § 711. He was tried by jury and convicted, but the jury was unable to agree on a sentence. The court sentenced him to serve a term of fifteen (15) years in the custody of the Department of Corrections of the State of Oklahoma. From said judgment and sentence defendant has perfected his timely appeal to this Court.

The first witness called on behalf of the State was Leonard Collins, who testified that he had been employed as a police officer with the Collinsville Police Department, Collinsville, Oklahoma, for three years. He testified that he was working the night shift on March 6, 1975, and at approximately 1:00 a. m. he responded to a "trouble call" at the Commercial Hotel. Officer Collins stated that he was met at Apartment No. 1 by Officers Coppedge and Kirkpatrick, and that upon entering the apartment he found a man on the floor next to a bed. Two men, identified as Bill Cohea and the defendant, were lying on the bed. Lee Nicholson was sitting in a chair by a table, upon which sat a nearly empty bottle of wine.

Officer Collins testified that he turned the man over who was on the floor, and upon seeing blood on the chest area of the man's shirt, tore open the shirt exposing what appeared to be a stab wound. The officer then called for an ambulance.

Officer Collins stated that Mr. Cohea appeared to be intoxicated, but the defendant did not. He further stated that Mr. Cohea had blood around his mouth and that the defendant had blood on his shirt. The officer testified that he knew that the deceased, Sam Jackson, carried a gun and that he worked at the Corner Bar. The officer further stated that he had investigated a shooting incident in which approximately seven shots were fired earlier that evening at the Corner Bar near the Commercial Hotel. No arrests were made, nor did the officer see any of the persons connected with the stabbing incident present at the bar.

The next witness for the State was Bob Randolph, a Deputy Sheriff of Tulsa County. He testified that he was on duty on March 6, 1975, and at 1:37 a. m. received a call to investigate a death in Apartment No. 1 of the Commercial Hotel. Upon arrival, Deputy Randolph found the scene essentially as Officer Collins described it. Randolph stated that a knife blade found at the feet of the victim appeared to be the stabbing weapon, and that the handle of the blade was found on the bed on which Mr. Cohea and the defendant were sitting. The deputy stated that there appeared to be blood on about three and a half inches of the blade, but tests run on it were not conclusive.

Deputy Randolph testified that Bill Cohea was intoxicated and was unable to give a statement until ten or twelve hours later. The deputy stated that no blood was found outside of the residence, nor in the area from the Corner Bar to the apartment.

The State next called James Lewis, who stated that he was a Tulsa County Deputy Sheriff. He testified that on March 6, 1975, he was called to the Commercial Hotel to investigate a homicide. Deputy Lewis stated that he returned to Nicholson's apartment the following day and removed a knife, which resembled the instrument used in the crime.

The next witness for the State was Bill C. Cohea, who testified that on March 6, 1975, about 5:00 p. m., he saw the defendant at the recreation hall in Collinsville, and together they went to the Corner Bar to have a beer. Mr. Cohea testified that he then went on alone to Red Nicholson's apartment, but that the defendant arrived there soon after he did. The three men then drank some whiskey before leaving the apartment to pick up the defendant's wife. Before returning to Red Nicholson's apartment they stopped to buy a half gallon of wine. Mr. Cohea stated that he soon left the apartment and went to his own house with the intention of spending the night there. However, upon finding the propane turned off, Mr. Cohea returned to Red Nicholson's apartment. He then testified that the defendant and defendant's wife had already gone to sleep on the hide-a-bed, and he also lay down in the bed next to the defendant. Mr. Cohea stated that as he got into bed he nudged the defendant with his elbow whereupon the defendant cried out, "Get your elbow out."

Bill Cohea testified that after he fell asleep he was awakened by some movement and woke up to see the defendant stabbing Mr. Jackson. The defendant's wife was no longer in bed. Mr. Cohea further testified that he did not see the actual stabbing, but saw the defendant reach around to Mr. Jackson's chest, whereupon Mr. Jackson fell to the floor. At that point, the witness testified that the defendant began hitting him in the face causing his nose to bleed. The witness stated that he thought the defendant had a knife in his hand. Mr. Cohea testified further that Red Nicholson came into the room and stopped the fight. He also stated that all the men had been drinking and that he himself was drunk.

The State's final witness was Robert Fogel, a pathologist. He stated that he had performed the autopsy on Sam Jackson and concluded that he died from a stab wound in the chest which penetrated into the heart and resulted in hemorrhage. The doctor further testified that the blade

which appeared to be the murder weapon could be consistent with the stab wound. Dr. Fogel stated that the death would have been rapid, within five minutes, and he found only a moderate amount of internal bleeding. The alcohol content of Mr. Jackson's blood at the time of his death was high, indicating that he was intoxicated. The doctor testified that the victim had recent abrasions on the face which could have been the result of a fall or a blow to the face.

Dr. Fogel further testified that it would have been possible for the victim to walk across the street after infliction of the wound. Alcohol, Dr. Fogel testified, acts as an anesthesia and the victim's tolerance for pain is greater.

The State then rested.

The defense began its case by calling as its first witness Rae Speegle. She testified that she had been married to the defendant for one and a half years, and that he had met Mr. Cohea while in the hospital. On March 6, 1975, the defendant was still taking medication. Mrs. Speegle stated that her husband knew Mr. Nicholson, but she did not think that he knew Mr. Jackson.

Mrs. Speegle substantially corroborated Bill Cohea's testimony as to the events which transpired from the time the three men picked her up until they returned to the Nicholson apartment. She stated that after her husband, the defendant, had gone to sleep on the hide-a-bed, she lay down beside him while Red Nicholson and Cohea were arm wrestling at the kitchen table. Later, Bill Cohea got into bed also and as he did he punched the defendant with his elbow. Mrs. Speegle testified that she told Bill Cohea to get out and that if he hit defendant in his stomach it would hurt him. She testified that Red Nicholson also called out to Bill Cohea. She stated that the defendant then turned over on his back and when she did likewise, she saw a man sitting on the side of the bed. She then crawled out at the foot of the bed, not knowing who the man was. Mrs. Speegle testified that she went to the kitchen to get some water and while there heard some "commotion" but heard no voices. She went back to the living room and saw the unidentified man on the floor and her husband struggling with Cohea. She testified that Red Nicholson came into the room and hit Cohea in the face to stop the fight. She then drove to the police station to get help.

Mrs. Speegle stated that when the police arrived at the scene Mr. Cohea inquired of them "why don't you all go out and find the ones who did this, find who shot him?" She testified that Mr. Cohea was unable to make a statement to the police because he was drunk. The witness stated that her husband did not carry a knife, nor did she see a knife in the bed. She stated that she did not see anyone stab Sam Jackson.

The next witness called for the defendant was Betty Boline. She stated that she was acquainted with Mr. Jackson, and stated that she knew there was trouble between Mr. Jackson and a man by the name of Gary McDonald. She testified that Mr. McDonald had caused Sam Jackson to lose one eye.

The next witness for the defense was A. C. Holder, owner of the Corner Bar. He testified that Sam Jackson worked for him, and that on the night of the 5th of March, 1975, he and Mr. Jackson closed the bar together. He stated that Mr. Jackson did not appear to be intoxicated.

Mr. Holder stated that a man, whom he could not identify, walked up to the front door of the bar and then turned around and left. He further testified that he knew a man named Gary McDonald and that he knew Mr. Cohea, and the man in question was neither the defendant nor one of the other two men.

Doris Goad was next called as a witness on behalf of the defendant. She stated that she was an employee of the Corner Bar, and that on the night in question Sam Jackson was not working at the bar.

**1048**

The next witness for the defense was O. L. Ingram, who stated that he had been in Collinsville on the evening of March 5, 1975. He testified that he had been at the recreation hall from around 10:00 p. m. to midnight, and upon hearing some shooting coming from the direction of the Corner Bar, drove past the bar after taking his girl friend home. As he approached the bar, he stated, he saw Mr. Holder standing in front of the bar. Mr. Ingram testified that Jackson was crossing the street, and that he had to slow down almost to a stop to avoid hitting Jackson. He further testified that Jackson appeared to be drunk because he was wobbling and staggering.

The next witness for the defense was Ben Miser, a private investigator employed by the defense. He testified that he investigated Jackson's death three or four months after it occurred and in the course of that investigation examined the streets, alley, walkways, and doors around Mr. Nicholson's apartment. The witness testified that the Oklahoma State Bureau of Investigation ran tests on samples taken from those places, and determined that the samples showed evidence of human blood. The witness could not state whether the blood found was from the early morning of March 6, 1975.

The next witness called on behalf of the defendant was Dolores Brooks who stated that she was a secretary employed by the Tulsa County Sheriff's Office. She stated that she took several statements concerning Sam Jackson's death, but she did not take Mr. Cohea's statement until March 7, 1975, at 3:40 p.m. She testified that Mr. Cohea had been drinking quite a bit, but that she was not qualified to determine whether or not he was intoxicated.

The defense then rested.

The State called Norman Howe Whisenhunt as a rebuttal witness. He testified that he was a Deputy Sheriff for Tulsa County and had been so employed on March 5, 1975 and March 6, 1975. Deputy Whisenhunt stated that on March 7, he had a conversation with Mrs. Speegle.

The witness stated that during the conversation he asked her:

". . . if she would have been the cause, if she thought her husband would allow anyone to bother her. She said no, if he was awake he wouldn't allow anyone to bother her."

\* \* \* \* \* \*

"Then I asked her if her husband was known to carry a knife.

\* \* \* \* \* \*

". . . She said if you know my husband there is no point in denying that." (Tr. 184–185)

The deputy testified that Mrs. Speegle's statement in the conversation was not taken under oath.

The State then rested.

Mrs. Speegle was recalled in surrebuttal, as a witness for the defense. She stated that she did not make any comments to Deputy Whisenhunt to the effect that her husband carried a knife.

The defense rested.

The defendant asserts as his single assignment of error that the trial court erred by not directing a verdict of acquittal on the grounds that the evidence produced by the State was so weak and uncertain that it should not have been sufficient to sustain a conviction for the crime of Manslaughter in the First Degree.

This Court has on numerous occasions considered the issue of sufficiency of evidence. As stated in *Jones v. State,* Okl. Cr., 468 P.2d 805, 807 (1970):

"Where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom since it is the exclusive province of the jury to weigh the evidence and determine the facts. . . ."

■ In the case at bar, defendant duly preserved his objections to the State's evi-

dence by way of a general demurrer. It is quite true that evidence raising only a suspicion is insufficient to sustain a conviction. However, a demurrer to the evidence admits the facts which the evidence tends to prove, and where there is any competent evidence which reasonably supports the allegations of the charge, a demurrer should not be sustained. See, *Byrne v. State,* Okl.Cr., 482 P.2d 620, 622 (1971).

From the foregoing recital of facts, it is apparent that the evidence, although circumstantial, was ample to support the jury's verdict. This Court stated in *Hunter v. State,* Okl.Cr., 478 P.2d 1001 (1970), in the second paragraph of the Syllabus as follows:

"Where there is evidence, although entirely circumstantial, from which the jury may reasonably and logically find the defendant guilty, the weight, credibility and probative effect of such evidence is for the jury, and the Court of Criminal Appeals will not disturb the verdict for insufficiency of the evidence."

The case of *Mayberry v. State,* Okl.Cr., 449 P.2d 912 (1969), closely parallels the evidence in the case at bar. The defendant in that case was convicted of manslaughter in the first degree for the death of the deceased by stabbing. Witnesses testified that the defendant Mayberry struck the deceased with whatever he had in his hand, which appeared to be a knife. This testimony is very similar to the statements made by Bill C. Cohea in the instant case.

We conclude that in the case at bar the jury was convinced of the defendant's guilt beyond a reasonable doubt, and based on that finding returned a verdict of guilty. The evidence presented in the case was competent and sufficient to sustain that conviction and the judgment and sentence in this case should be, and the same is, therefore, *AFFIRMED.*

BRETT, P. J., and BLISS, J., concur.