96  580
105  571

THE PEOPLE v. WILLIAM PALMER.

*Homicide—Self-defense—Evidence—Instructions—Manslaughter.*

1. Where the testimony in a homicide case shows that, on the day of the killing, the deceased exhibited a revolver with which he had armed himself, and threatened to shoot the respondent if he ever crossed his path, it is error to refuse to instruct the jury to consider the threats and the exhibition of the revolver in determining which party was the aggressor, and the probable character of the assault; citing *People v. Harris*, 95 Mich. 87.

2. Where there is testimony in a homicide case which, if believed, would warrant a verdict of manslaughter, the court should define that offense, and instruct the jury accordingly.

Error to Saginaw. (Edget, J.) Argued June 22, 1893. Decided July 26, 1893.

Respondent was convicted of murder in the second degree, and sentenced to imprisonment in the State prison for 30 years. Judgment reversed, and a new trial ordered. The facts are stated in the opinion.

*John E. Nolan* (*George W. Weadock*, of counsel), for respondent.

*A. A. Ellis*, Attorney General, and *William R. Kendrick*, Prosecuting Attorney, for the people.

MONTGOMERY, J. The respondent was convicted of murder in the second degree. The offense charged was shooting and killing his brother. The testimony on the part of the people tended to show that on the day of the shooting the respondent and his brother had some words of dispute in a saloon; that the respondent left the saloon, deceased remaining there; that the respondent proceeded to arm himself with a double-barreled shot gun, and returned to the saloon. The deceased had in the mean time armed himself with a revolver. The respondent stepped up to the door of a screen which divided the front from the rear portion of the saloon, and called out to his brother: " Come up! Come up!" The deceased stepped forward, and the respondent fired, and the shot resulted in fatally wounding the deceased. There was testimony also tending to show that the deceased fired upon the respondent before the respondent fired at him. There was some testimony on the part of the respondent that he procured the shot-gun to go hunting; that he had no intention of using it against his brother; and that when he called out in the manner in which he did, " Come up! Come up!" he did so in a bantering way.

The charge of the learned circuit judge was, in the main,

unusually clear. One of the requests prepared by respondent's counsel, to which no reference was made by the charge, we think should have been given. There was evidence showing that deceased had made threats against the respondent; that he threatened to shoot him if he ever crossed his path. These were made by the deceased on the day of the shooting, and after he had armed himself with the revolver. Respondent's counsel asked an instruction as follows:

" In considering which of the brothers, Albert or William, was the aggressor, and the probable character of the assault, you should carefully weigh and consider the previous threats made by Albert, and the purchase and exhibition of the loaded revolver by him, as a person who has made threats against the life of another, and purchased and loaded a revolver a few minutes before, is more likely to make an assault than a person who has made no threats."

This request should have been given, or its substance covered by the general charge. *People v. Harris*, 95 Mich. 87, 90, in which case it was said:

" The testimony tending to show the *animus* or motive of the deceased was, in view of the conflict in the testimony upon that point, competent as bearing upon the question as to which was the assailant."

See, also, *Holler v. State*, 37 Ind. 57; *Stokes v. People*, 53 N. Y. 164.

We also think the court should have defined the offense of manslaughter, and instructed the jury that, if the testimony warranted it, they might convict of the lesser offense. See *Hurd v. People*, 25 Mich. 412; *Maher v. People*, 10 Id. 212; *Pond v. People*, 8 Id. 150. It is possible that the instruction of the circuit judge upon the subject of self-defense was so favorable to the respondent as that, were this the only question in the case, we might be able to say that no harm was done by the omission to define the offense of manslaughter; but, as the case is to

be reversed on other grounds, it is not necessary for us to determine this question. There was evidence from which the jury might have found that the respondent had no malice towards the deceased, but that, after being attacked by deceased, he, in the heat of passion, and in the excitement and confusion caused by the assault, fired the fatal shot, thus reducing the offense to manslaughter, even though the jury would be able to say that the assault did not excuse the homicide.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.