ENGLISH *et al. v.* THE STATE.

1. The evidence introduced by the State and the statements of the accused upon the trial having presented the issue as to whether they were guilty of murder or of voluntary manslaughter, and the judge having undertaken to charge the jury generally as to voluntary manslaughter, it was his duty in so doing to state the law on this subject correctly in all respects. Accordingly, the following charge was erroneous: " I charge you that it could neither justify nor reduce the killing, unless [the person killed] made the assault and the assault was of a character to put the other's life in imminent peril at the time, or it appeared to him to do so."

2. Otherwise than as above specified, no material error was committed upon the trial.

November 26, 1894.

Indictment for murder. Before Judge WELLBORN. Hall superior court. September term, 1894.

Joseph and Jack English were indicted for the murder of H. M. Waldrep. They were found guilty, with a recommendation that Jack English be imprisoned in the penitentiary for life. Their motion for a new trial was overruled, and they excepted. The motion contained the grounds that the verdict was contrary to law and evidence, and the following:

The court charged: "If you shall be satisfied from the evidence in this case that Waldrep was killed by either one of them, and that death resulted either from the use of the pistol or of the knife, if they were acting

with common intent to take his life, then both would be responsible for the use of the weapon which resulted in the death, if death resulted from the use of only one of them." Alleged to be error, because without evidence to support it.

The court charged: " In this case if Joe English shot and killed Waldrep, and the shooting was done in the execution of a common intent on the part of both Joe and Jack English to assault the person of Waldrep with weapons, then both would be guilty of the shooting." It is alleged that there was no evidence to sustain this charge, and that the court several times repeated and emphasized the idea that there was conspiracy or common intent on the part of defendants, when there was no evidence to warrant it.

After defining malice, the court charged: " If one declares his purpose to take the life of another, and he does take it, his malice may well be said to be express, unless some lawful cause for the killing appears." Error, because clearly implying that the killing was done with malice, and because it is an expression of opinion that a threat to take life will make a killing murder.

The court charged: " If one takes the life of another without any words disclosing the state of his mind or the reason for his act, the circumstances attendant upon the killing will be looked to in order to determine the presence or absence of malice." Alleged to be error, because implying that the circumstances attending the killing will be looked to in order to determine the presence or absence of malice, *only* in case no words were used by defendant disclosing the state of his mind or the reasons for his act; and because it assumes that if threats were made malice shall be found to exist, whereas in the definition of both express and implied malice, it is declared that the circumstances are the resort for the jury from which to determine the presence or absence of malice.

The court charged: " I give you the definition of voluntary manslaughter, for the reason that it has been insisted that that law is applicable in this case. I do not undertake to determine that question. I give you the rule, the definition of what manslaughter is; and you will be able to determine from the evidence in this case whether that is the offence committed by these parties, or either of them, or whether it is some other, or whether they are not guilty of anything." Error, in saying he gives in charge the law of voluntary manslaughter because it had been insisted on, and not because the court believed it applicable to the case; in leaving to the jury to determine the law of the case, when it is the duty of the court to charge what is the law applicable to the case; the jury might well infer from the language of this charge, that the court considered the defendants guilty of murder under the evidence.

The court charged: " It is not insisted even that this could be involuntary manslaughter of any sort." Error, in not saying either that the law of involuntary manslaughter does or does not apply to the case, but in declaring that it was not insisted even.

The contention of defendants' counsel was, that in this case there was no provocation by mere words or gestures, but an actual assault was made by Waldrep upon Joe English, that he seized him with both hands violently, that he was physically a stronger man, that he choked him, that there was manifest intention to engage in mutual combat, and that these circumstances were sufficient to justify the excitement of passion, while they exclude all idea of deliberation whatever. It was not insisted that there was an assault upon the part of deceased upon these parties, and that that assault was of a character which rendered the killing of Waldrep an absolute necessity; but it was insisted that Waldrep assaulted Joe English, and that the assault was of such

character as to reduce the homicide to manslaughter on the part of Joe English, while Jack English was guilty of no offense whatever.   It was therefore error in the court to charge as follows: "It is insisted here that there was an assault upon the part of the deceased upon these parties, and that that assault was of a character which rendered the killing of Waldrep a necessity." This charge did not fully and fairly represent the contention of defendants' counsel, which was that in any event Joe could not be guilty of a higher offense than voluntary manslaughter, and that he was guilty of nothing if the circumstances were such as to excite the fears of a reasonable man, and that he acted under the excitement of these fears and not in a spirit of revenge.

After giving the usual charge in reference to the statements made by defendants, the court added : "It is supposed that a statement will not have weight with the jury unless it is the truth, and they believe it to be the truth.   The law trusts you, trusts your discretion to use these statements, and trusts that discretion to the extent of saying that the jury may believe the statements in preference to the sworn testimony." Error, because while applicable to the evidence as well as to the statements as an abstract truth, yet using it in reference to the statements, it tended to disparage the statements, and to lead the jury to give less consideration and effect to them than they otherwise would have done or than what the law justifies.

The court charged: "If the defendant acted in self-defense, if the evidence satisfies the jury that it was made to appear to him, at the time he did the act that resulted in death to the party, that it was necessary that he should do it in order to save his own life, then he would be justified, unless he brought about or was responsible in bringing about the state of affairs that put him in peril; if he did that, if you should believe

that English was the original assailant here, why then he could not kill the other party and be guiltless, whether he was put in danger or not, whether his life was put in peril or not, he could not be justified." Error, in the addition of the words beginning with "unless" following "justified"; because the charge as given excluded the possibility of being justified if he originated the difficulty, and also excluded the possibility of reducing the killing from murder to manslaughter.

Error in charging as stated in the opinion.

Jones & Bowden, C. L. Bass and J. B. Estes, for plaintiffs in error. J. M. Terrell, attorney-general, and Howard Thompson, solicitor-general, contra.

Atkinson, Justice.

1. The defendants were jointly indicted for the offense of murder, were found guilty, and made a motion for a new trial upon many grounds, all of which appear in the official report of this case. A number of exceptions were taken to the charge of the court and error assigned thereon, but upon a careful examination of the full charge, which comes up in the record, we are constrained to the opinion that, save as to that portion of the charge to which we will hereafter refer, whatever of verbal inaccuracies may seem to appear in these fragments of the charge, when they are considered in the light of the entire instruction to the jury, the same are free from substantial error.

2. One ground of the motion for a new trial assigns error upon the following charge of the court: "I charge you that it could neither justify nor reduce the killing, unless Waldrep made the assault and the assault was of a character to put the other's life in imminent peril at the time, or it appeared to him to do so." We have carefully examined the general charge to ascertain whether thereby the judge in any manner qualified this instruc-

tion, but we find that he did not, so that in grading the degree of the homicide this is made the rule of decision by which the jury is to be guided in its deliberations. Was this a correct rule? If not, let us inquire wherein consists its error. In order to *justify* a homicide, it must appear that at the time of the killing the circumstances were such as to impress a reasonably courageous man with the belief that at the hands of the deceased he stood in imminent peril of his life, or of the infliction upon him of injuries amounting to a felony. Such degree of peril, however, is not necessary to *reduce* the offense from murder to voluntary manslaughter. If the deceased should commit an assault or battery upon the slayer, though such attempted or actual violence should not in any way imperil his life nor amount to the commission of a felony upon his person, such assault or such battery would be sufficient to reduce the killing to voluntary manslaughter, provided the jury should believe it to be of such a character as to excite in the person assaulted that violent sudden impulse of passion supposed to be irresistible, and further, that the fatal shot was fired under the inspiration of such overmastering passion, and not in a spirit of revenge. Whatever may have been the real truth of the transaction, the statements of the accused presented such a state of facts that, if the jury had believed them true, they could have found that the deceased had made an assault upon the slayer, and could have inferred in the slayer the frame of mind which would have reduced the degree of his guilt to the lower grade of homicide. Yet, by the instruction now under consideration, they are charged that in no event could an assault by the person slain have the effect to *reduce* the grade of the offense committed by the slayer, unless such assault was of a character to put the life of his adversary in imminent peril. This is not the standard fixed by the law. According to the

standard fixed by the court, the slayer would be *justified* under the law; and to require a jury to find a homicide justifiable before they would be authorized to *reduce* the degree of homicide from murder to voluntary manslaughter, is to demand of the defendant a higher degree of exculpatory evidence than the law requires. He satisfies the law that he is entitled to have his offense graded as voluntary manslaughter, without showing that his life was imperiled; he may to that point satisfy the law by showing the commission upon him of a battery not amounting to a felony. But he can meet the requirement of this instruction by the court and have his offense graded as voluntary manslaughter, only by showing the commission upon him of such a battery as places him in imminent danger of his life. This was the final paragraph in the charge of the court. It was the parting injunction to the jury as they retired to their room. There was nothing said by the court to neutralize its effect. It was directly to the point, and may have had a controlling influence in moulding the verdict; and giving as it did an erroneous rule for the guidance of the jury upon a vital point in the case, we are constrained to award a new trial.

The verdict was excepted to as being contrary to the evidence, but as the cause goes back to be retried, we forbear to make any observations upon that branch of the case.                                    *Judgment reversed.*