### Roy Davis v. The State.

#### No. 7959.   Decided March 12, 1924.

**Assault to Murder—Malice—Definition.**

In order to make one guilty of assault to murder the evidence must satisfactorily show that his act was the result of malice, and that his mind was sufficiently cool to enable him to know and understand what he was doing and the consequences of his act, and under the facts of the instant case this court must conclude that the defendant having received the maximum punishment was not acting at the time with malice and that the judgment should be reversed and the cause remanded.

Appeal from the District Court of Bell. Tried below before the Honorable Lewis H. Jones.

Appeal from a conviction of assault with intent to murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*De Witt Bowmer,* for appellant on appeal only.—On question of adequate cause: Mays v. State, 19 S. W. Rep., 504; Chamblees v. State, 79 id., 577; Oglesby v. State, 39 Texas, 53.

*Tom Garrard* and *Grover C. Morris,* Assistants Attorney General, and *Few Brewster,* District Attorney for the State. Cited Walters v. State, 35 S. W. Rep., 652; Stephenson v. State, 25 id., 784; Hatton v. State, 21 id., 679; Jenkins v. State, 17 id., 938.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Bell County of assault to murder, and his punishment fixed at fifteen years in the penitentiary.

Three young men, a half gallon fruit jar of corn whisky, a bottle of wine, a woman, a Ford coupe and a night ride furnish the setting for this case. The young men were friends, jolly good fellows and boon companions. As the ride progressed they drank the liquor until one of them became so intoxicated as that he was compelled to find a place of rest outside the car. His condition of helplessness or the lack of power to help on the part of his friends compelled them to leave him by the side of the road while they went further. They agreed to return for him later. Presently they came to a turn in the road but concluded to go straight on. They ran down a high bank and knocked down two fence posts at this point. Regaining the road, appellant desired that they return and pick up their unfortunate friend. Terry, the injured party, who was driving the car, declined and increased the speed of the vehicle. Appellant pulled the key out of the car which thereupon stopped. Terry demanded the return of the car key from appellant who denied having it, and the two men got out of the car and went toward the front of the radiator. When they met all parties agree that Terry struck at appellant. Appellant asserts that Terry struck him with a pistol and broke his thumb. Appellant's thumb was broken as affirmed by a disinterested physician who saw it later and another disinterested witness to whose house appellant and the woman went later to telephone for assistance. When Terry struck appellant the latter fell but regained his feet and fled pursued by Terry. After running appellant down the road a short distance Terry returned to the car, and in a little while appellant came back. Terry again demanded the return of the car key and appellant again asserted that he did not have it, whereupon Terry again started toward appellant who retreated up the road. Terry then began searching in the car for the key and appellant returned with a rock in his hand and struck Terry on the head and knocked him to the ground. He then struck Terry a number of blows on the head and face with the rock, according to the State's testimony. Appellant asserts that when he returned to the car from his second flight that he and Terry began to fight and got down upon the ground and that he was getting the worst of the fray and his hand came in contact with a rock which he seized and used to defend himself, claiming that he then beat Terry until the latter fell over and let him alone. Witnesses who came to the scene afterward said that the weeds were mashed down for quite a little space and that they had a great deal of blood on them, and at least two rocks were found with blood on them. Appellant left Terry lying on the ground and went to the car where he and the woman sat and

talked for a while, and then appellant said they must do something, that they had to help Terry and get assistance. He and the woman then went to the nearest house the owner of which said that appellant's thumb was broken and that his face was covered with blood. He phoned at their request to Temple for a truck which later came and carried them to town. Terry's head was found upon examination to be bruised in a number of places and in one place there was a depression of the skull which required trephining by physicians. Two of the rocks with blood on them were brought into the court room and exhibited and identified as rocks which were picked up there at the scene. A witness said there were other rocks there. One of the rocks described as weighing about two pounds and the other was a smaller rock, a description of which is not in the record.

In order to make one guilty of assault to murder the evidence must satisfactorily show that his act was the result of malice and that his mind was sufficiently cool to enable him to know and understand what he was doing and the consequences of his act. If from any reason his mind was incapable of cool reflection which condition arose from such cause as would produce that mental condition in a person of ordinary temper, and while in this condition he inflicted the injury, he could only be guilty of aggravated assault. An assault and battery producing pain or bloodshed is laid down by our law-makers as one of those things which will be deemed in law an adequate cause to produce that mental condition, a showing of which would reduce a homicide from murder to manslaughter, or an assault to murder to aggravated assault. We find ourselves unable to understand the attitude of the jury in the instant case. The undisputed testimony shows that at some time during the difficulty the thumb of appellant was broken. It is also practically undisputed that Terry struck the first blow, and this seems to be the only blow that he did strike. All the parties were intoxicated. They were all friends a few minutes before the fight began. We can not quite understand how in this condition and viewing the case as one in which the proof shows with seeming satisfaction that Terry, the injured party, struck the first blow, and when the further facts seem to established that in striking this blow he broke the thumb of appellant thereby inflicting upon him pain and bloodshed,—the conclusion can be escaped that the assault by appellant with the rock following immediately upon the heels of the beginning of the difficulty,—could be no more than manslaughter if a homicide had resulted. It seems evident to us that the assault was necessarily upon sudden passion,— the men were friends, they were having a good time, according to their lights, until appellant pulled the car key out of the car apparently for the purpose of stopping it and effecting a return to where his other friend had been left. Swiftly upon the heels of this

act followed the assault by Terry, the chasing of appellant down the road in the course of which he twice fell, the subsequent chasing of appellant down the road from which he returned with a rock in his hand and the assault upon Terry ensued. We recognize the fact that a solution of these matters is ordinarily for the jury, and that if the evidence supports their conclusion this court will not interfere with it; but when the verdict seems so wholly in the face of the evidence and when the jury have inflicted the maximum penalty, this court cannot escape the belief that there must have been a misapprehension of the law or its application on the part of the jury. The conduct of the entire party was reprehensible and we do not assert that appellant did not deserve punishment, but if we are capable of judging the circumstances under which a man's mind may be said to be actuated by malice aforethought as compared to those circustances under which a man's mind would seems to be incapable of cool reflection, we are compelled to conclude that the facts in this case bring it within the latter class.

If there was any serious dispute of the fact that the injured party struck the first blow, or of the fact that he thereby inflicted upon appellant an injury necessarily causing him pain and bloodshed, or of the fact that speedily following this, appellant assaulted Terry, there might be excuse for our letting this young man suffer the maximum penalty for assault to murder, but we believe that the dispassionate mind cannot escape belief that if there be a case in which the setting, attendant facts and surroundings show a mind incapable of cool reflection, these facts are shown in this record.

Believing that the result of the trial does not evidence that this appellant has been convicted as the result of that understanding and deliberate judgment which should precede the infliction of the maximum punishment for crime, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*