## BROWN et ux. v. KANSAS CITY BRIDGE CO.

### No. 2046.

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1939.

Breazeale & Sachse, of Baton Rouge, for appellant.

Fred G. Benton and Fred S. LeBlanc, both of Baton Rouge, for appellees.

OTT, Judge.

Jasper Conrad Brown, son of plaintiffs, was drowned on February 10, 1938, when he fell off a barge into the Mississippi River as he was attempting to prize loose a sack of cement lying against the retaining wall of the barge. The cement was being unloaded from the barge into the river in connection with the construction of the bridge across the Mississippi River by the defendant company just north of Baton Rouge. Plaintiffs allege that their deceased son was over twenty-one years of age and unmarried; that their said son contributed all of his earnings to their support except his bare living expenses, and that they were dependent on him to the extent of 80% of his earnings; that his weekly wage was $42, and they are entitled to 80% of the maximum weekly compensation of $20, or $16 per week for 300 weeks, a total of $4,-800. Plaintiffs also asked for funeral expenses, but this item is nowhere mentioned in the evidence, nor in the judgment, and is not urged on appeal, so we assume it has been abandoned.

Without stating the pleadings in detail, it will suffice to say that the issues are narrowed down to three principal questions: (1) whether or not the death of the deceased employee was caused by his deliberate failure to use a guard or protection for his safety on the barge where he was working, which guard or protection consisted of the retaining wall around the sides of the barge; (2) whether or not plaintiffs were dependent for support on the deceased and, if so, the extent of that dependency; and (3) the amount of compensation.

The trial court rendered judgment in favor of plaintiffs for $4,800, payable in weekly installments of $16 for 300 weeks, beginning February 17, 1938, with legal interest on each installment from its due date. The defendant has appealed, and plaintiffs have answered the appeal asking that the judgment be amended by increasing the compensation to $6,000, that is by allowing the maximum of $20 per week for 300 weeks.

Around the four sides of the barge on which the deceased was working there was a wooden wall or guard rail about three feet high and some four inches wide on the top, placed one or two feet in from the outer edge of the sides of the barge. The principal purpose of this wall was to hold sand, gravel and other cargoes on the barge and, of course, the wall also served as a protection to persons on the barge to keep them from falling overboard. Instructions had been given to the workmen, including the deceased, to work on the inside of this retaining wall.

According to one witness who was working with the deceased at the time of the accident, the latter was standing on top of this wall and with a five-foot crowbar was prizing loose a sack of cement pressing against the wall, when the crowbar slipped loose and the deceased was precipitated backwards into the swift current of the river and drowned before he could be rescued. His body was never recovered. Another witness says that the deceased was standing on the outside of the retaining wall with one foot on the outer edge of the barge and the other foot pressing against the wall when the bar with which he was prizing loose the cement slipped, precipitating the deceased backwards into the water. Both of these witnesses testified that young Brown made some remarks about falling in the river as he got on top or on the outside of the wall in his effort to prize loose the sack of cement, and one of the witnesses says that he told the deceased to get back inside the cargo wall.

One of the grounds for not allowing compensation to an injured employee or his dependents under Section 28 of the compensation law, Act 20 of 1914, is where the injury is caused "by the injured employee's deliberate failure to use an adequate guard or protection against accident provided for him." In our opinion, the defense on this ground urged in this case is not proved and does not suffice to defeat recovery for two reasons, either of which is sufficient to make this provision inapplicable to this case.

In the first place, the guard or protection with which the employee is charged with a deliberate failure to use, contemplates something which is provided by the employer principally as a safety or protection to the employee, and not that which is placed on the premises or on the machinery as a component part of it, and whose principal purpose is to facilitate or expedite the work. The law itself says the deliberate failure to use the guard or protection has reference to a guard or protection "against accident" provided by the employer.

If the defendant's contention were adopted as a rule of construction in cases of this kind, it might be contended that the body of a wagon or truck, the emergency brake of a motor vehicle, the reins for driving a horse, the levers for starting and stopping dangerous machinery, were guards or protections and the employee injured because of his negligence and carelessness in using these might be precluded from recovering compensation where it is shown that the employee was warned to avail himself of these protections for his safety and he deliberately failed to do so. The effect of such a construction would be to open the way to defeat recovery of compensation in many cases because of gross negligence on the part of the employee, or in case of his intentional disobedience of instructions. We think one of the purposes of the compensation law was to prevent the employer from defeating recovery by the employee for an injury because of his contributory negligence. Haven v. Munson, La.App., 169 So. 819; Cole v. List & Weatherly Const. Co., La.App., 156 So. 88.

In the second place, we think that the failure of the deceased to stay within the cargo wall in doing his work was not a deliberate failure to use a guard or protection against accident, provided by the employer. The word "deliberate" as used in the act implies something more than mere negligence, or a voluntary and intentional failure on the part of the workman to use the guard or protection. The word carries with it an implication of some obstinacy, headstrongness, foolish daring, or intentional wrongdoing on the part of the employee. McClendon v. Louisiana Central Lumber Co., 17 La.App. 246, 135 So. 754; Bersch v. Morris & Co., 106 Kan. 800, 189 P. 934, 9 A.L.R. p. 1377.

The deceased was merely trying to place himself in a position where he could secure a stronger hold on the sack of cement in order to move it from its position. His act in getting on top of the railing, or on the outside of it, in an effort to do his work to better advantage, no doubt was carelessness and disobedience to instructions on his part, and the act was done intentionally and with full knowledge of the danger attendant upon it, yet it can hardly be said that his act was headstrong, obstinate, daring, or done with the intention of wrongdoing.

We have given due consideration to the cases of Daigle v. Moody, 175 La. 853, 144 So. 596, and Carter v. Christ et al., La. App., 148 So. 714, cited by counsel for defendant and largely relied on in support of this part of the defense. We find that the boat furnished by the employer in the first case, and the safety line furnished by the employer in the second case, were furnished for the protection and safety of the employees exclusively, and the workmen well knew that these protections were so furnished for their safety. These cases, in our opinion, support the conclusion that we have reached. Had the employer in the present case furnished its employees on the barge with life preservers, safety belts, or some other such protection from drowning, and the deceased had deliberately failed to use these protections after having been instructed to do so, then the cited cases would apply and our conclusion would probably be different.

On the question of dependency, the trial judge found that the deceased contributed as much as 80% of his earnings to the support of his parents and their family. The mother of deceased said that his contributions to the family during the year prior to his death averaged over $100 per month. It is shown by two witnesses that the deceased spent from $25 to $30 per month at one store for groceries and supplies for the family and from $30 to $40 per month at another store. In addition to the amount of $55 to $70 paid by him to these two stores for supplies for the family, the deceased also paid for some doctor bills, drugs and clothes for the family of his parents.

The deceased lived away from home most of the time while working for himself, but he came home at intervals of every week or so, and either brought the money with him or sent it to his mother. The deceased ran the store accounts in his own name, and seems to have been looked upon by the merchants as the principal provider for plaintiffs and their family of three other children. The credit was extended to the deceased son and he was the one who paid the bills and looked after the supplies for the needs of the family. While the father earned some $700 during the year previous to the death of the deceased, yet it appears that most of this sum was taken up in payments on a mortgage and other debts.

■ The evidence shows that the deceased made a little over $120 per month if he worked the full time allowed him and in addition to that he did some extra work for his uncle with whom he was staying almost sufficient to pay for his board and lodging. Of course the young man had some incidental personal expenses, but we think the trial judge was correct in his finding that the deceased contributed as much as 80% of his earnings to the support of his parents the year prior to his death.

After the evidence was concluded, plaintiffs filed a supplemental petition alleging that the deceased was a minor at the time of his death and that he contributed all of his earnings to the support of his family except about 20% and that as the deceased was a minor his living expenses were not deductible, and therefore the parents were 100 per cent dependent on him under the compensation law, and asked for full compensation of $20 per week for 300 weeks, or the sum of $6,000. The supplemental petition was filed, but later was ordered stricken out under a rule filed by defendant for that purpose.

We do not deem it necessary to pass on the correctness of the ruling in striking out this supplemental petition as we agree with the trial judge that the evidence is not certain that the deceased was a minor at the time of his death. Not only does the petition allege that he was over twenty one years of age at the time, but the deceased himself in making out his application for the job, stated that he was born on November 27, 1916. The deceased was not only a fairly intelligent young man but seems to have been honest and reliable, and it is hardly conceivable that he misstated his age. Moreover, the statements of the father and mother as to the age of their deceased son—that he was not of age—are not very definite or impressive, and no family record or other corroborative evidence was produced to support their statements.

■ The deceased worked a maximum of 176 hours per month, or 44 hours per week,

and received 70 cents per hour, a weekly wage of $30.80. If the parents had been wholly dependent on their deceased son, their compensation would have been 65% of this weekly wage, or the maximum of $20 per week. But as they were partially dependent to the extent of 80%, under the first paragraph of subsection 2 of Section 8 of the compensation law, Act 20 of 1914, as amended, the trial court correctly fixed their compensation at 80% of $20 per week, or $16 per week for 300 weeks.

For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of appellant.