Argued December 7, 1964, reargued June 7, affirmed
September 8, 1965

# STATE OF OREGON *v.* JONES

405 P. 2d 514

*George A. Haslett, Jr.* and *Francis F. Yunker,* Portland, argued the cause and submitted a brief for appellant.

*Tom P. Price,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

Defendant appeals from a judgment of conviction for the crime of murder in the second degree.

Defendant contends that the evidence precludes a finding of malice which is a necessary element in the crime of murder in the second degree as defined by ORS 163.020 (1).[1]

The facts were as follows. The victim, Robert Bowman, and defendant were sitting at the counter in Ethel's Cafe on Burnside street in Portland, where they were eating. They engaged in an argument over a minor matter. Aroused, Bowman laid down his knife and fork, removed his glasses, walked over to defendant, struck him and backed him against a cigarette machine, striking him several more times with his fist.

---

[1] ORS 163.020 (1). "Any person who kills another purposely and maliciously but without deliberation and premeditation, or in the commission or attempt to commit any felony other than rape, arson, robbery or burglary, is guilty of murder in the second degree."

While backed against the cigarette machine defendant struck Bowman with a knife. Defendant stabbed Bowman three times, once in the back. One of the thrusts was so hard that it caused the knife to enter Bowman's body deeper than the length of the blade. Bowman did not employ a weapon of any kind. It is not clear whether defendant stabbed Bowman after defendant had worked himself away from the cigarette machine. A police officer who was in the restaurant at the time of the quarrel testified that "the deceased was leaning over the counter in a stooped position, and just at the minute I looked the defendant was withdrawing a knife from complainant's back. He immediately slumped a little bit and the defendant jumped back across the wall with the knife in a raised position." Bowman was only five feet four and one-half inches tall and weighed only 105 pounds. The evidence does not disclose defendant's size. The jury saw him and if he was substantially larger than Bowman that fact could be considered by the jury in deciding whether malice motivated defendant, as we shall explain later.

■ The question is whether on these facts the jury could find malice. Without malice the crime could be no greater than manslaughter. It is contended that malice is lacking in the present case because the facts incontrovertibly show that defendant acted in the heat of passion as a result of Bowman's assault.

■ It may be assumed that Bowman's assault aroused defendant's passion. But this does not dispose of the matter. The statute requires a provocation apparently sufficient to create an "irrestible passion." As said in *Mancini v. Director of Public Prosecutions* [1942] L. R. (A.C.) 1, "the mode of resentment must bear a reasonable relationship to the provocation if the offense is to be reduced to manslaughter."

■ Two variables must be weighed in relation to each other—the degree of provocation and the measures employed by the defendant in response to it. If the provocation consists of an assault, it may or may not be sufficient to make the defendant's passion irresistible. The size of the assailant, the manner in which he approached the defendant, the language used, and other facts must be considered in judging the effect they might have upon the defendant or upon a reasonable man, depending upon whether a subjective or objective test is used.[2] On the other side of the scale must be weighed the instrument employed by the defendant to kill his assailant, the language employed by him, his size in relation to that of his assailant, and other facts.

■ It is the jury's function to weigh these factors unless in the particular case the court can say as a matter of law that the defendant did or did not have an irresistible passion. Defendant assumes that the evidence in the present case establishes that he must have had an irresistible passion when he stabbed Bowman. The jury could have concluded otherwise. "Heat of passion" and "malice" are at best very vague terms which must be applied in the light of the legislative purpose in differentiating second degree murder and manslaughter. The differentiation apparently was made "out of the indulgence to the frailty of human nature,"[3] recognizing that the provocation in some cases may be so great as to warrant a penalty less than that prescribed for murder. In deciding whether

[2] In the present case the jury was instructed in terms of an objective test, i.e., employing the standard of a reasonable man. See criticism of this test in Manslaughter and the Adequacy of Provocation: The Reasonableness of the Reasonable Man, 106 U Pa L Rev 1021 (1958).

[3] Maher v. The People, 10 Mich 212, 219 (1862).

the defendant should be given the benefit of this recognition of the "frailty of human nature," his conduct must be measured against the standards of the community. The jury is best equipped to apply that standard. The trial court properly submitted to the jury the question of defendant's malice.

■ Defendant contends that the court erred in instructing the jury on the subject of self-defense. The alleged error relates to the following portion of the whole instruction: "The person asserting the defense must have been reasonably without fault in bringing on the difficulty which resulted in the death of the deceased." The entire instruction on self-defense makes up approximately four pages of the transcript. It was explained that if defendant "provoked the assault, or if he was the aggressor in the affray, then he cannot justify the killing on the ground of self-defense, unless after provoking the difficulty he was endeavoring to withdraw from it." The court went on to say that "In such situation he would be precluded by his conduct of availing himself of the necessity which was self-imposed and which he brought upon himself." Later the court explained that "the right of self-defense does not imply the right of attack and will not avail in any case where the difficulty was induced by the party himself."

Admittedly, there was little evidence relating to provocation. The principal witness described the situation at the lunch counter just before the fatal fight began. He testified that defendant was "talking" and "making a lot of noise"; that "he acted tough, or something like that"; but that "he wasn't bothering nobody." The deceased "said in a nice way, 'There are two policemen here' " to which defendant replied, " 'to hell with the cops, and to hell with you.' " Whereupon

deceased got up from his seat at the counter and approached defendant and the fight ensued.

The instruction, taken as a whole, could not have left any doubt in the mind of the jury as to the applicable law.[4] We hold that the instruction considered as a whole did not create reversible error.

Judgment affirmed.

---

[4] The following, which is only a part of the whole instruction on self-defense, made clear to the jury the defendant's right of self-defense:

"In determining whether the deceased was killed by the defendant under the reasonable apprehension of death or great bodily harm, you should consider what would be the reasonable apprehension of the defendant in the situation in which, from the evidence, you find him at the time of the alleged killing of Bowman. You should consider all of the evidence relating to the position of the deceased and the defendant— that they were in at the time of the alleged commission of the act, together with all of the evidence bearing upon the scene of the conflict, as you have received it in the evidence produced. You should determine whether the defendant acted in the honest and reasonable belief that it was necessary to take the life of the deceased to preserve his own life or to protect him from great bodily harm. He had the right to act upon appearances if they would lead an ordinarily reasonable and prudent person in his situation to apprehend imminent danger to life or limb, and to resist such apparent imminent danger with sufficient force to repel the same. But the danger must have been so urgent that the killing was actually or apparently necessary to avert it.

"Whether there was real or apparent imminent danger of death or great bodily harm existing at the time of the fatal wound inflicted upon Bowman, is a question for you to determine from all of the evidence in the case, and the circumstances attending the affray, if you find there was an affray.

"If you find from the evidence that the defendant killed Bowman under such condition as warranted and caused a reasonable belief on his part that he was in imminent peril of life or great bodily harm, that he did not have a reasonable opportunity to escape and avoid the affray, and that he killed the deceased to preserve his own life or to protect himself from great bodily harm, under the belief it was necessary for this purpose, then the defendant killed Bowman in self-defense, and you should return a verdict of Not Guilty. The

148

PERRY, J., dissenting.

The majority do not meet the question raised by this appeal.

It must be constantly kept in mind that all of the evidence introduced was by the state. Also, it should be noted that the knife used by the defendant was not a pointed knife, but a wide blade ordinary kitchen paring knife.

The question presented is whether or not the state has proved beyond a reasonable doubt that malice aforethought was present when the homicide was committed. In other words, the question before this court is not whether the facts will support a conviction of manslaughter, but will they support a conviction of murder?

Malice aforethought is an essential ingredient of murder and must be established by the state beyond a reasonable doubt. *State v. Nortin,* 170 Or 296, 133 P2d 252; *State v. Butler,* 96 Or 219, 186 P 55.

The majority fail to take note of ORS 163.040, which reads as follows:

"(1) Any person who, without malice express or implied, *without deliberation,* and *upon a sudden heat of passion caused by a provocation apparently* sufficient to make the passion irresistible, voluntarily kills another, is guilty of manslaughter.

reasonableness of this belief is to be determined from his standpoint, but it is a question for you, members of the jury, to determine whether he had sufficient grounds upon which to base such a belief. Now if you are satisfied beyond a reasonable doubt that this defense has not been established, then you should disregard it. The plea of self-defense does not, however, cast the burden of proof upon the defendant. The burden remains on the State and it does not shift. So, if you have a reasonable doubt as to whether the defendant killed the deceased in self-defense, you should resolve that reasonable doubt in favor of the defendant and acquit him."

"(2) Any person who, in the commission of any unlawful act, or a lawful act without due caution or circumspection, involuntarily kills another, is guilty of manslaughter. The provisions of this subsection shall not apply to the killing of any person where the proximate cause of such killing is an act of omission defined as negligent homicide in ORS 163.091.

"(3) Every killing of a human being by the act, procurement or culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable or negligent homicide as provided in ORS 163.091, is manslaughter." (Emphasis supplied.)

It will be noted, this statute includes all homicides which are not "justifiable or excusable," not alone those committed in a "sudden heat of passion caused by a provocatoin apparently * * * irresistible."

The majority seemingly believe that the burden of proof of lack of malice rests upon the defendant. Such a burden never rests upon a defendant when it is the state's evidence that raises the issue. *State v. Copenbarger,* 52 Idaho 441, 16 P2d 383.

Also, a defendant is entitled as a matter of law to every reasonable doubt. This is clearly disclosed by the legislative mandate:

"When it appears that the defendant has committed a crime of which there are two or more degrees and there is a reasonable doubt as to the degree of which he is guilty, *he can be convicted of the lowest of those degrees only.*" ORS 136.050. (Emphasis supplied.)

The majority state as a question of fact for the jury: Did the defendant have an irresistible passion when he stabbed the deceased? The statute makes no such requirement; the accent or thrust of the statute

is upon "a sudden heat of passion caused by a *provocation apparently sufficient* to make the passion irresistible." ORS 163.040, supra. (Emphasis supplied.) As I understand this statute, the word "apparently" refers to the provocation. An "apparent" provocation means "* * * seeming other than true or real, likely * * *, obvious." Black's Law Dictionary De Luxe Fourth Edition, p. 123.

While this court does not sit as a jury to weigh evidence, it is necessary for this court to determine whether there is evidence of malice sufficient to sustain the verdict. *State v. Olds,* 19 Or 397, 24 P 394.

The majority admit the assault and battery was sufficient to arouse defendant's passion.

> "Premeditated design or malice aforethought and heat of passion are contradictory states of minds and cannot exist at the same time with reference to the act of homicide. The existence of one element excludes the other. This is usually a question of fact for the jury to determine; but where there is no dispute as to the facts, or if only the evidence heard against the accused be considered, it becomes a matter of law for the court to adjudge." *McHargue v. Commonwealth,* 231 Ky 82, 21 SW2d 115, 116, 117.

Where the pertinent facts are not in dispute, their sufficiency to establish the necessary elements of a crime are questions of law for the court. *People v. Holt,* 25 Cal2d 59, 153 P2d 21; *State v. Seaburg,* 154 Me 162, 145 A2d 550; *State v. Smith,* 140 Me 255, 37 A2d 246; *Dawson v. State,* 83 Okla Cr 263, 175 P2d 368.

The majority point to no facts which disclose malice aforethought. Also, since the majority point to no facts from which malice may be inferred, they

perhaps rely upon the so-called "conclusive" presumptions:

"(1) An intent to murder, from the *deliberate* use of a deadly weapon, causing death within a year.

"(2) A malicious and guilty intent, from the *deliberate* commission of an unlawful act, for the purpose of injuring another." (Emphasis supplied.) ORS 41.350.

In *State of Oregon v. Nodine,* 198 Or 679, 692, 259 P2d 1056, this court pointed out that § 2-406, Subd. (1), OCLA (now ORS 41.350(1)), was not a conclusive presumption but rebuttable, following *State v. Gibson,* 43 Or 184, 190, 73 P 333, where the court stated:

"* * * The jury, therefore, should not be instructed that an intent to murder is conclusively presumed from the act of killing by the deliberate use of a deadly weapon, unless nothing else appears in the case—no other testimony—to modify or excuse the act."

The court then pointed out in *Nodine* that this presumption could never be used to establish murder in the first degree, but could apply only to murder in the second degree.

From these statements, it seems clear that the presumption can only apply where there are no circumstances to rebut the presumption or where there is a conflict in the evidence as to the occurrence which would permit the jury to rely upon the presumption to establish the fact of a malicious intent to kill beyond a reasonable doubt. *State of Oregon v. Nodine,* supra.

"* * * *where there are no circumstances to prevent or rebut the presumption,* the law will presume the unlawful act was intentional and malicious, and was prompted and determined by the ordinary and natural operations of the mind." *State v.*

*Brown,* 41 Minn 319, 323, 43 NW 69. (Emphasis supplied.)

It is clear that these presumptions may not apply under the facts of this case. The state's evidence discloses a sudden conflict between strangers, with no cooling period, and in which the deceased was the aggressor. Each of the presumptions require deliberate acts.

"*Deliberate,* v. To weigh, ponder, discuss, regard upon, consider. Cole v. List & Weatherly Const. Co., La. App., 156 So. 88, 90. To examine, to consult, in order to form an opinion. McGregor v. State, 83 Tex.Cr. R. 35, 201 S.W. 184, 186. To weigh in the mind; to consider the reasons for and against; to consider maturely; reflect upon; as to deliberate a question; to weigh the arguments for and against a proposed course of action. People v. Thomas, 25 Cal.2d 880, 156 P2d 7, 17, 18.

"*Deliberate,* adj. Well advised; carefully considered; not sudden or rash; circumspect; slow in determining. McClendon v. Louisiana Cent. Lumber Co., 17 La.App. 246, 135 So. 754, 756. Willful rather than merely intentional. Cole v. List & Weatherly Const. Co., La. App., 156 So. 88, 90. Formed, arrived at, or determined upon as a result of careful thought and weighing of considerations, as a deliberate judgment or plan; carried on coolly and steadily, especially according to a preconceived design; given to weighing facts and arguments with a view to a choice or decision; careful in considering the consequences of a step; slow in action; unhurried; characterized by reflection; dispassionate; not rash. People v. Thomas, 25 Cal.2d 880, 156 P2d 7, 17, 18. The word carries with it an implication of some obstinacy, headstrongness, foolish daring, or intentional wrongdoing. Brown v. Kansas City Bridge Co., La.App., 191 So. 755, 757.

"By use of this word, in describing a crime, the

idea is conveyed that the perpetrator weighs the motives for the act and its consequences, the nature of the crime, or other things connected with his intentions, with a view to a decision thereon; that he carefully considers all these; and that the act is not suddenly committed. It implies that the perpetrator must be capable of the exercise of such mental powers as are called into use by deliberation and the consideration and weighing of motives and consequences. In re Nunns, 188 App. Div. 424, 176 N.Y.S. 858, 865; Jenkins v. Carman Mfg. Co., 79 Or. 448, 155 P. 703, 705.

" 'Deliberation' and 'premeditation' are of the same character of mental operations, differing only in degree. Deliberation is but prolonged premeditation. *In other words, in law, deliberation is premeditation in a cool state of the blood, or, where there has been heat of passion, it is premeditation continued beyond the period within which there has been time for the blood to cool, in the given case.* Deliberation is not only to think of beforehand, which may be but for an instant, but the inclination to do the act is considered, weighed, pondered upon, for such a length of time after a provocation is given as the jury may find was sufficient for the blood to cool. One in a heat of passion may premeditate without deliberating. Deliberation is only exercised in a cool state of the blood, while premeditation may be either in that state of the blood or in the heat of passion. State v. Hall, 40 N.M. 128, 55 P2d 740, 742; People v. Thomas, 25 Cal.2d 880, 156 P.2d 7, 17; State v. Payne, 213 N.C. 719, 197 S.E. 573, 579; State v. Roedel, 107 Utah 538, 155 P.2d 741, 749; State v. Cade, 326 Mo. 1132, 34 S.W.2d 82, 83." Black's Law Dictionary, De Luxe Fourth Edition, pages 513, 514. (Emphasis supplied.)

This court in *State v. Ogilvie*, 180 Or 365, 376, 175 P2d 454, stated that malice may be inferred "[w]hen a homicide is shown to have been intentional, unlawful

and *deliberate,* \* \* \* under circumstances which are insufficient to reduce the crime to manslaughter."

It is clear that the state's uncontradicted evidence discloses facts sufficient to reduce the crime to manslaughter and therefore malice may not be inferred.

Whether or not a jury could find that after the defendant was assaulted by the deceased he formed an intention to kill during the fight that had started is immaterial in determining malice, for paragraph (1) of ORS 163.040 uses the term "voluntarily kills another."

"Voluntarily" means "intentionally." Black's Law Dictionary, De Luxe Fourth Edition, p. 1746.

"\* \* \* An intentional homicide committed in a sudden rage of passion engendered by adequate provocation, and *not the result of malice conceived before the provocation,* is voluntary manslaughter. \* \* \*." Perkins on Crimnal Law, Ch 2, Sec. 1, Voluntary Manslaughter, p. 42. (Emphasis supplied.)

As previously pointed out, the thrust of our statute is not on whether the homicide was the result of an irresistible passion, but upon whether or not the homicide (1) was in sudden heat of passion, caused (2) by a *provocation apparently* sufficient to make the passion irresistible.

"Sudden heat of passion," as used in the manslaughter cases, simply means that "the killing must have followed the provocation before there had been a reasonable opportunity for the passion to cool." Perkins on Criminal Law, Ch. 2, Sec. 1, Manslaughter, p. 43. There can be no question but that the state established this element of manslaughter.

We then must turn to the question of adequate provocation for "[i]t does not matter how violent the

slayer's passion may have been, it will not relieve him of the implication of murder unless it was engendered by a provocation which the law recognizes as being reasonable and adequate." 26 Am Jur 171, Homicide § 25.

The law recognizes as a sufficient provocation one that would naturally or reasonably arouse the passions of an ordinary, average, reasonable man. *State v. Henderson,* 24 Or 100, 32 P 1030; *People v. Wells,* 10 Cal2d 610, 76 P2d 493; *Hart v. U.S.,* 130 F2d 456, 76 U.S. App. D.C. 193; *Bishop v. U.S.,* 107 F2d 297, 71 App. D.C. 132; *People v. Russell,* 322 Ill 295, 153 NE 389; *People v. Ortiz,* 320 Ill 205, 150 NE 708; *McHargue v. Commonwealth,* 231 Ky 82, 21 SW2d 115; *State v. Wright,* 38 NM 427, 34 P2d 870; *State v. Nevares,* 36 NM 41, 7 P2d 933; *Wooten v. State,* 171 Tenn 362, 103 SW2d 324; *Toler v. State,* 152 Tenn 1, 260 SW 134; *Davis v. State,* 96 Tex Cr 646, 259 SW 946; *State v. Lantzer,* 55 Wyo 230, 99 P2d 73; 40 CJS 908, Homicide, note 94.

An actual or real sudden assault and battery committed by a deceased upon an accused with intent to do bodily harm, insofar as I am able to ascertain, has always been considered adequate provocation. See *State v. Joiner,* 161 La 518, 109 So 51; *Combs v. State,* 175 Miss 376, 167 So 54. Also, *Stewart v. State,* 78 Ala 436; *Ex p. Warrick,* 73 Ala 57; *Judge v. State,* 58 Ala 406, 29 AmR 757; *Collins v. State,* 102 Ark 180, 143 SW 1075; *Clardy v. State,* 96 Ark 52, 131 SW 46; *Atkins v. State,* 16 Ark 568; *McCoy v. State,* 8 Ark 451; *Peo. v. Turley,* 50 Cal 469; *State v. Costen,* Houst. Cr. 340; *State v. Till,* Houst. Cr. 233; *State v. O'Neal,* Houst. Cr. 58; *U. S. v. Heath,* 20 DC 272; *State v. Havercamp,* 54 Iowa 350, 6 NW 535; *Williams v. Com.,* 80 Ky 313, 4 Kyl 3; *Cook v. Com.,* 4 Kyl 31;

11 Ky Op 676; *Com. v. Webster,* 5 Cush 295, 52 AmD 711; *Peo. v. Palmer,* 96 Mich 580, 55 NW 994; *Hurd v. Peo.,* 25 Mich 405; *State v. Conley,* 255 Mo 185, 164 SW 193; *State v. Weakley,* 178 Mo 413, 77 SW 525; *State v. Reed,* 154 Mo 122, 55 SW 278; *State v. Stockwell,* 106 Mo 36, 16 SW 888; *State v. Blunt,* 91 Mo 503, 4 SW 394; *State v. Edwards,* 70 Mo 480; *State v. Branstetter,* 65 Mo 149; *State v. Brown,* 64 Mo 367; *State v. Levigne,* 17 Nev 435, 30 P 1084; *State v. Hand,* 170 NC 703, 86 SE 1005; *State v. Miller,* 112 NC 878, 17 SE 167; *State v. Crane,* 95 NC 619; *State v. Gaskins,* 93 NC 547; *State v. Kennedy,* 91 NC 572; *State v. Smith,* 77 NC 488; *State v. Brodnax,* 61 NC 41; *State v. Sizemore,* 52 NC 206; *State v. Curry,* 46 NC 280; *State v. Tackett,* 8 NC 210; *State v. Yarbrough,* 8 NC 78; *Com. v. Ware,* 137 Pa 465, 20 A 806; *Abernethy v. Com.,* 101 Pa 322; *Com. v. Drum,* 58 Pa 9; *State v. Gallman,* 79 SC 229, 60 SE 682; *State v. Gilliam,* 66 SC 419, 45 SE 6; *Draper v. State,* 4 Baxt 246; *Quarles v. State,* 1 Sneed 407; *Nelson v. State,* 10 Humphr 518; *Slaughter v. Com.,* 11 Leigh (38 Va) 681, 37 AmD 638; *State v. Clifford,* 59 W Va 1, 52 SE 981; *State v. Zeigler,* 40 W Va 593, 21 SE 763; *Reg. v. Hagan,* 8 C & P 167, 34 ECL 670; *Rex v. Thomas,* 7 C & P 817, 32 ECL 889; *Rex v. Bourne,* 5 C & P 120, 24 ECL 483; *Stedman's Case,* Fost 292; *Reg. v. Eagle,* 2 F & F 827; *Reg. v. Mawgridge,* Kel. C.C. 119, 84 Reprint 1107. 29 CJ 1137, Note 4. With one exception, *Commonwealth v. Webb,* 252 Pa 187, 97 A 189.

And the assault need not be so violent as to put the accused in danger of death. *Stewart v. State,* 78 Ala 436; *Williams v. State,* 107 Ga 721, 33 SE 648; *English v. State,* 95 Ga 123, 20 SE 651; *State v. Taylor,* (Mo) 336 SW2d 495; *State v. Whited,* 360 Mo

956, 231 SW2d 618; *State v. Sizemore,* 52 NC 206; *State v. Yarbrough,* 8 NC 78.

1 Wharton's Criminal Law 804, Homicide § 585, states:

"The moment, however, the person of the defendant is touched with apparent insolence, then the provocation is one which, ordinarily speaking, reduces the offense to manslaughter. Thus it has been held that if A be passing along the street, and B meeting him (there being a convenient distance between A and the wall) take the wall of him, and thereupon A kill B, this is murder; but if B had jostled A, this jostling, if made with such apparent insolence as to provoke a quarrel, and if hastily resented by A, in hot blood, reduces the grade to manslaughter.

"A *fortiori,* where an assault is made with violence or circumstances of indignity upon a man's person, as by pulling him by the nose, and the party so assaulted kills the aggressor, the crime will be reduced to manslaughter, in case it appears that the assault was resented immediately, and the aggressor killed in the heat of blood, the *furor brevis* occasioned by the provocation. And so it was considered that where A was riding on the road and B whipped the horse of A out of the track, and then A alighted and killed B, it was only manslaughter."

This is the rule of law in this state. If a person "under the provocation of a sudden attack, grew angry and killed the deceased without any real or apparent necessity[,] [u]nder those circumstances the killing would not be justifiable or excusable, and the verdict of manslaughter would be sustained." Section 1902, L.O.L. [now ORS 163.040(3)], *State v. Butler,* 96 Or 219, 236, 186 P 55.

As authority for the position taken by the majority, that malice may be found because "the mode

of resentment must bear a reasonable relationship to the provocation if the offence is to be reduced to manslaughter," they cite a 1942 House of Lords decision, *Mancini v. Director of Public Prosecutions,* A.C. 1.

The facts in that case are not at all applicable to those of the case before us. As will be noted, there was in fact no battery of the person in *Mancini,* and the court was distinguishing between an actual or real provocation and an apparently sufficient provocation. The House of Lords was considering whether the trial court, under the facts of that case, was in error in not instructing the jury on manslaughter, the defense being based on self-defense. The court stated, pages 9 to 10:

> *"It is not all provocation that will reduce the crime of murder to manslaughter.* Provocation to have that result, must be such as temporarily deprives the person provoked of the power of self control, as the result of which he commits the unlawful act which causes death. *'In deciding the question "whether this was or was not the case, regard must be had to the nature of the act by which* the offender causes death, to the time which elapsed between the provocation and the act which caused death, to the offender's conduct during that interval, and to all other circumstances tending to show the state of his mind"'*: Stephen's Digest of the Criminal Law, art. 317. The test to be applied is that of the effect of the provocation on a reasonable man, as was laid down by the Court of Criminal Appeal in Rex v. Lesbini (I), so that an unusually excitable or pugnacious individual is not entitled to rely on provocation which would not have led an ordinary person to act as he did. In applying the test, it is of particular importance (a) *to consider whether a sufficient interval has elapsed since the provocation to allow a reasonable*

*man time to cool,* and (b) to take into account the instrument with which the homicide was effected, for to retort, in the heat of passion induced by provocation, by a simple blow, is a very different thing from making use of a deadly instrument like a concealed dagger. In short, the mode of resentment must bear a reasonable relationship to the provocation if the offence is to be reduced to manslaughter.

"Before, therefore, Macnaghten, J.'s summing-up can be criticized on the ground that it did not deal adequately with the topic of provocation, *we have to see what was the extent of the provocation as disclosed by the evidence which the jury had to consider, and for this purpose we have to exclude altogether the allegation made by the appellant that he heard the voice of Fletcher threatening him with 'knifing,' and that Distleman came at him with an open pen-knife in his hand.* The judge had already instructed the jury fully on these matters and had directed the jury to acquit the appellant altogether if they felt they could accept the appellant's story. The alternative case, therefore, as to which it is suggested that a defence of provocation was open, must be regarded on the basis that the appellant's story was rejected. In that view the only knife used in the struggle was the appellant's dagger, and *this followed Distleman's coming at him and aiming a blow with his hand or fist. Such action by Distleman would not constitute provocation of a kind which could extenuate the sudden introduction and use of a lethal weapon like this dagger, and there was, therefore, on the assumption that the appellant's evidence was rejected,* no adequate material to raise the issue of provocation." (Emphasis supplied.)

In commenting upon this case, Stephens in his Commentaries On the Laws of England, 21st ed, Vol IV, Criminal Law, p. 55, states:

"In Mancini v. Director of Public Prosecution

[1942], A.C. 1, the prisoner killed the deceased with a dagger in the course of a quarrel. The only act of provocation was the hostile attitude of the deceased who aimed a blow with his fist at the prisoner."

The law recognizes a distinction between passion aroused by an actual battery and one that is threatened or unsuccessful, or merely technical.

Perkins on Criminal Law, Ch 2, Sec 1, Manslaughter, p. 45, states:

"If an assault results in a battery, the latter receives chief attention so far as provocation is concerned. There are homicide cases, however, in which the fatal force was used by the slayer because of an actual or apparent attempt to commit a battery upon him although it did not result in an actual application of force to his person. *In these cases it is necessary to make a sharp distinction between defensive force and vindictive force.*"

The comparison of the provocation with the response in an attempted or technical battery to incite sudden and uncontrolled passion sufficient to reduce murder to voluntary manslaughter is illustrated by the facts in *Swain v. State,* 151 Ga 375, 107 SE 40; *State v. Fisko,* 58 Nev 65, 70 P2d 1113.

There can be no question but that, since the deceased assaulted the defendant without legal justification, (mere scurrilous words unaccompanied by an overt act are insufficient to justify an assault, *State v. Wiley,* 144 Or 251, 24 P2d 1030; *Penn v. Henderson,* 174 Or 1, 146 P2d 760) the defendant was justified in defending himself after the battering of his body was commenced by the deceased.

A killing ensuing from a sudden transport of passion or heat of blood, if in sudden combat, is man-

slaughter. *State v. Donovan,* 1 Terry 257, 8 A2d 876; *Beach v. Commonwealth,* 240 Ky 763, 43 SW2d 6; *State v. Durham,* 201 NC 724, 161 SE 398; *Hunt v. State,* 202 Tenn 227, 303 SW2d 740; *State v. Robinson,* 161 Ohio St. 213, 118 NE2d 517. And in some states the definition of manslaughter expressly so provides. *People v. Ross,* 34 Cal App2d 574, 93 P2d 1019; *Dean v. Commonwealth,* 260 Ky 97, 83 SW2d 887.

But should the majority conclude that the jury would be justified in finding the killing was not due to a sudden passion or heat of blood in sudden combat, although there is no evidence to the contrary, still, under the facts of this case, the defendant could be convicted of no more than voluntary manslaughter. For, although a jury might find that the defendant as a reasonable man was not justified in believing that the deceased intended to commit a personal injury upon him amounting to a felony which would entirely justify the homicide in the eyes of the law, ORS 163.100(2)(a), if the defendant was in fear of some injury less than a felony and the homicide was not justified under ORS 163.100(2)(a) the offense is manslaughter and not murder. *McDaniel v. State,* 209 Ga 827, 76 SE2d 500.

This rule seems particularly applicable in this state since ORS 163.040 provides that the crime shall be manslaughter if the homicide is not justifiable or excusable.

The trial court in instructing the jury on the defendant's contention that he was acting in self-defense when the homicide was committed informed the jury that "The person asserting the defense must have been reasonably without fault in bringing on the difficulty which resulted in the death of the deceased." Under

the facts of this case, the instruction took from the defendant the defense of self-defense.

The defendant excepted on the ground that this portion of the general instruction on self-defense was misleading "in that we do not know the difficulty referred to * * * whether it means the loud language while they were sitting there having coffee, or while they were standing. It is entirely misleading as to what is meant by 'bringing on the difficulty.' "

While the objection made was not as clear and concise as it might have been, it was certainly sufficient to advise the court that, if this language was to be given, the court should point out to the jury the evidence which would be sufficient to justify the instruction.

In the abstract, this instruction is a correct statement of the law, for it is well established that a defendant may not deliberately bring on an assault and then contend he acted only in self-defense.

The only evidence in this case of the defendant doing anything which might be considered by the jury as "fault" in bringing on the difficulty was his statement made to the deceased: "To hell with the cops, and to hell with you." If this language addressed to the deceased be considered scurrilous and abusive language, then, in the absence of a showing of prior ill will between the parties or some overt act by defendant, the offensive words are not sufficient to deprive a defendant of the right of self-defense. *State v. Doris,* 51 Or 136, 94 P 44, 16 LRA NS 660.

Again it must be remembered that all of the evidence in this case which raises the defendant's defense of self-defense was introduced by the prosecution. The burden was, therefore, upon the state to establish that the homicide was unjustifiable because defendant was

not free from fault. *Minix v. Commonwealth,* 266 Ky 801, 100 SW2d 825; see also *Bragg v. State,* 236 Ala 270, 183 So 682; *Edwards v. State,* 58 Okla Cr 15, 48 P2d 1087.

Therefore, the use of the word "difficulty" in the instruction without informing the jury as to the kind of "difficulty" that would deny the defendant his defense, permitted the jury to find that his language alone deprived him of his defense.

In my opinion, there was a question of fact for the jury as to whether or not the defendant used greater force than was necessary to defend himself under the circumstances and he could be found guilty of the felony of manslaughter, but there is no evidence in this case of malice aforethought that would sustain the verdict of murder and the trial court should have taken that degree of homicide from the jury.

The instruction given by the trial court on self-defense was clearly erroneous and prejudicial and in any event the cause should be reversed for a new trial.

SLOAN, J., joins in this dissent.